CHARLES PIPER

*v.*

FRANCIS CONNELLY *et al.*

*Filed at Ottawa January 23, 1884.*

1. APPEAL—*whether freehold involved*—*in trespass quare clausum fregit, on plea of liberum tenementum.* In trespass *quare clausum fregit,* for breaking and entering the plaintiff's close and cutting and carrying away his ice, when the pleas are the general issue and *liberum tenementum,* a freehold is involved, and an appeal lies directly from the trial court to the Supreme Court. The plea of *liberum tenementum,* when put directly in issue by the replication, necessarily involves a freehold.

2. CONVEYANCE—*rule of construction.* The question of the intention of the parties in conveying land must be ascertained from the language of the deed and all the attendant circumstances in evidence, and not merely by the letter in the descriptive part of the deed.

3. SAME—*reference to a prior bond for a deed.* In construing a deed made in discharge of a prior bond for a conveyance, the bond may be referred to as a circumstance showing the intention of the parties as respects the sale, not of itself conclusive, but to be considered in connection with other circumstances.

4. BOUNDARIES—*as to land on a water-course—whether the line extends to the center of the stream.* A grant of land bounded upon a river or its margin, above tide-water, carries with it the exclusive right and title of the grantor to the center thread of the current, unless the terms of the grant clearly denote an intention to stop at the margin.

5. SAME—*a bond for a deed construed, as to whether grant extends to center of river.* A bond for a deed of land on a river, after describing the land, contained the further words, "together with all water privileges, rights and immunities of the said party of the first part therewith connected:" *Held,* that these words, taken in connection with the fact that there were no water privileges, etc., connected with the tract save those resulting from the river being the boundary on one side, rendered it absolutely certain it was not intended that the purchaser's right should terminate at the water's edge.

6. SAME—*reference in deed to a plat, as controlling description.* A deed, after giving the description of the premises conveyed, stated that all the premises were situate in a certain section, township, etc., "according to the map drawn on back hereof:" *Held,* that this made such plat a part of the deed, and a descriptive part of the subject of the conveyance.

7. Where a plat on the back of a deed is referred to in the description of the premises conveyed, it can not be presumed to be inaccurate, but it must be regarded as more fully representing the intention of the parties than the preceding language, so far as fixed monuments are concerned. Where such plat shows a single line for the stream as a boundary, it will be taken as representing the center of the stream, and not the banks, as it would if another line was drawn for the margin.

8. SAME—*fixed monuments control courses and distances in description.* Fixed monuments always control courses and distances in the description of land in a deed. Where a river is made a boundary line it is a fixed monument, the same as the starting point in the description, and the distance between such monuments is immaterial.

9. EVIDENCE—*relevancy.* In an action of trespass for entering plaintiff's close and cutting and removing ice, it was not claimed there was any trespass beyond the center line of the river, and the proof showed the defendant had a right to take the ice to such center. It was held no error to exclude evidence showing the meandered line of the stream.

10. MEASURE OF DAMAGES—*trespass in taking plaintiff's ice in river.* In trespass for breaking into the plaintiff's close and cutting and removing his ice from the river, the measure of damages is the value of the ice as soon as it had been scraped, plowed, sawed, cut and severed, and ready for removal, and this generally, and not with reference to the particular situation or convenience of one person or another.

APPEAL from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.

Messrs. C. H. & C. B. WOOD, for the appellant:

Under the issues the question of title was necessarily involved. *Dean* v. *Comstock,* 32 Ill. 179.

The owner of land may maintain trespass without actual entry, unless there is an actual exclusive adverse possession. *Wilcox* v. *Kinzie,* 3 Scam. 218; *Cook* v. *Foster,* 2 Gilm. 655; *Holligan* v. *Chicago and Rock Island R. R. Co.* 15 Ill. 558; *Barber* v. *Trustees of Schools,* 51 id. 396.

If a grantor describes the boundary line as running along the bank of a river, as here, the grant will not extend to the center of the stream, but only to its bank. Angell on Watercourses, (7th ed.) 28. In support of this principle, see *Child* v. *Starr,* 4 Hill, 369; *Starr* v. *Child,* 5 Denio, 599; *Halsey* v. *McCormick,* 3 Kern. 297; *Sizer* v. *Devereux,* 16 Barb. 160; *Babcock* v. *Utter,* 1 Abb. Court of App. Dec. 40; *Jackson* v. *Hathaway,* 15 Johns. 447; *Lapish* v. *Bangor Bank,* 8 Me. 85; *Bradford* v. *Crescey,* 45 id. 13; *Stone* v. *Augusta,* 46 id. 127; *Nickerson* v. *Crawford,* 16 id. 245; *Stover* v. *Freeman,* 6 Mass. 440; *Hatch* v. *Dwight,* 17 id. 297; *Daniels* v. *Cheshire R. R. Co.* 20 N. H. 85; *Lessee of McCulloch* v. *Aten,* 2 Ohio, 425; *Houghton* v. *Roscoe,* 3 Hawks, (N. C.) 21; *Rockwell* v. *Baldwin,* 53 Ill. 19.

But where one is bounded on a stream generally, without words of restriction, he takes to the center of the stream. *Middleton* v. *Pritchard,* 3 Scam. 522; *Braxon* v. *Bressler,* 64 Ill. 488; *City of Chicago* v. *Laflin,* 49 id. 176; *Houck* v. *Yates,*

82 id. 179; *Village of Brooklyn* v. *Smith,* 104 id. 429; *Washington Ice Co.* v. *Shortall,* 101 id. 46.

Mr. Henry W. Leman, and Mr. William J. Hynes, for the appellees:

An action of trespass does not involve title, the *gist* being possession. Unless there is possession, actual or constructive, whether the plaintiff has title or not, the action will not lie. *Cook* v. *Foster,* 2 Gilm. 655.

Natural boundaries and directions, when at variance with number of feet or distance, when given in a conveyance, will govern. *Davis* v. *Rainsford,* 17 Mass. 207; *Lodge* v. *Barnett,* 46 Pa. St. 484; *Evansville* v. *Page,* 23 Ind. 527; *Brown* v. *Huger,* 21 How. 305; *Hall* v. *Davis,* 36 N. H. 569; *Murphy* v. *Campbell,* 4 Pa. St. 485; *Commonwealth* v. *Roxbury,* 9 Gray, 490; *Coburn* v. *Coxeter,* 51 N. H. 158.

All the cases cited as to the extent of a grant bounded on a river, depend, as a rule, upon the peculiar circumstances arising in each. *State* v. *Gilmanton,* 9 N. H. 461; *Newton* v. *Eding,* 23 Vt. 319; *Cold Spring Iron Works* v. *Tolland,* 9 Cush. 492; *Newhall* v. *Iveson,* 13 Gray, 262; *Steamboat "Magnolia"* v. *Marshall,* 39 Miss. 109; *Rhodes* v. *Otis,* 33 Ala. 578.

Washburn on Real Prop. (3d ed.) p. 353, sec. 46, lays down the doctrine that a grant to a river, or the bank of a river, (not navigable,) unless there be something in the instrument limiting such grant, takes to the center or thread of the stream, subject, however, to the public easement for water-course or highway purposes. This doctrine is followed in this State. *Middleton* v. *Pritchard,* 3 Scam. 510; *Board of Trustees* v. *Haven,* 5 Gilm. 548; *Same* v. *Same,* 11 Ill. 554; *Braxon* v. *Bressler,* 64 id. 490; *Cobb* v. *Lavalle,* 89 id. 331.

The only Illinois case that can be tortured into sustaining a different doctrine, is *Rockwell* v. *Baldwin,* 53 Ill. 19. In that the description is, "to the west side of Cedar creek,

thence down along the west line of said creek." We submit that the words "west side," and "down the west line," do not comprehend as much as the word "bank."

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action of trespass *quare clausum fregit,* for breaking and entering the close of the plaintiff and cutting and carrying away his ice. The pleas were the general issue and *liberum tenementum.* The jury found the defendants guilty, and assessed the plaintiff's damages at $75. Plaintiff thereupon moved the court for a new trial, but the court overruled the motion, and gave judgment upon the verdict. The plaintiff prosecutes this appeal to reverse that judgment.

A question *in limine,* raised by a motion of the defendants to dismiss the appeal for want of jurisdiction in this court, is, whether a freehold is involved, within the meaning of those words as used in the Appellate Court act. (Laws of 1877, p. 70, sec. 8.) The answer must be in the affirmative, and the motion be overruled. The plea of *liberum tenementum,* necessarily, where, as here, it is directly put in issue by the replication, involves a freehold. Addison on Torts, (4th ed.) 282; 2 Greenleaf on Evidence, sec. 626; *Cocker* v. *Crumpton,* 1 Barn. & Cress. 491; *Doe* v. *Wright,* 10 Ad. & Ellis, 780; 37 Eng. Com. Law, 410.

The main point in contestation upon the merits is, whether the court below erred in holding that the defendants had a freehold in a part of the *locus in quo,* and in excluding from the jury, in consequence, all evidence relating to the cutting and taking away of ice thereon. The defendants claim title to this part of the *locus in quo* by virtue of a written contract of sale made between Hugh Alexander and them on the 30th of May, 1873, and possession thereunder, and also by virtue of a deed from the same party to them on the same day. The plaintiff claims, remotely, under a deed of trust made by said Hugh Alexander on the 30th of March, 1875. This

deed of trust is not only junior to the deed to the defendants, but it expressly excepts from its operation the real estate thereby conveyed, including, however, all, within a described tract, not included in it nor occupied by the Illinois and Michigan Canal, and the Chicago, Alton and St. Louis Railroad Company. The question, therefore, depends upon the construction of the defendant's deed. Shall it be construed as conveying to the defendants title to the center thread of the current of the Desplaines river? If yes, the ruling below was right; if otherwise, it was erroneous.

The general doctrine that grants of land bounded upon rivers or their margins, above tide-water, carry the exclusive right and title of the grantee to the center thread of the current, unless the terms of the grant clearly denote the intention to stop at the margin of the river, has been too long established, and too firmly adhered to by this court, to be now questioned. *Village of Brooklyn* v. *Smith,* 104 Ill. 429; *Cobb* v. *Lavalle,* 89 id. 331; *Chicago and Pacific R. R. Co.* v. *Stein et al.* 75 id. 41; *Braxon* v. *Bressler,* 64 id. 488; *Chicago* v. *Laflin* 49 id. 172; *Board of Trustees* v. *Haven,* 11 id. 554; *Same* v. *Same,* 5 Gilm. 548; *Middleton* v. *Pritchard,* 3 Scam. 510.

In *Rockwell* v. *Baldwin et al.* 53 Ill. 19, it was, however, said, that this was but a presumption, for one man may own the bed of such a stream, and another may own the banks; that where, in a deed conveying land, the boundary is limited to the bank of the stream, instead of bounding it along or on the stream, the presumption must fail, and that the party must be controlled by the terms of his deed. Counsel for appellant insist this is conclusive of the present case, for, here, defendants' boundary is limited to the banks of the Desplaines river. The question of intention must be settled by the language of the deed and all the attendant circumstances in evidence, and not merely by the letter in the descriptive part of the deed. (*Hadden* v. *Shoutz,* 15 Ill. 582;

*Batavia Manf. Co.* v. *Newton Wagon Co.* 91 Ill. 239; *Louisville and Nashville R. R. Co. et al.* v. *Koelle et al.* 104 id. 460.) It does not clearly appear, here, whether the contract or the deed was prior in execution, but the fair presumption is that the contract was, and that the deed was executed in discharge or satisfaction of the contract; but even in that view the contract may be referred to as a circumstance showing the intention of the parties as respects the sale,—not of itself conclusive, but to be considered in connection with other circumstances. This contract, after the description of the property, had these words added: "Together with all water privileges, rights and immunities of the said party of the first part therewith connected." This, in connection with the fact that there is no pretense that there are any water privileges, rights, etc., connected with the tract save those resulting from the river being the boundary on one side, renders it absolutely certain it was not then intended that the defendants' rights should terminate at the water's edge. The description in the deed is as follows:

"Commencing at a point of land on the east line of section 32, T. 38, N. of R. 12, east of the 3d P. M., at the intersection of the north line of the Illinois and Michigan Canal right of way; thence north along said section line 717 feet to the south bank of the Desplaines river; thence south 47 deg. west along said south bank 1360 feet; thence south 52 deg. 30 min. east 656 feet to the north line of said canal right of way; thence north 37 deg. 30 min. east along said line 500 feet; thence north 45 deg. 15 min. east 285 feet, to the place of beginning,—all said premises being situated in said section 32, T. 38, N. of R. 12, E. of the 3d P. M., according to the map drawn on back hereof."

This makes the plat on the back of the deed as much a part of the description as if it were drawn in the description,—a descriptive part of the subject of the conveyance. *Louisville and Nashville Railroad Co. et al.* v. *Koelle et al. supra.*

The map drawn on the back of the deed is as follows, as shown by the appellant's abstract:

This, it will be observed, shows the Desplaines river, and not its banks, as the boundary on that side, there being but a single line, indicating the river alone.

In the language that Chancellor WALWORTH quotes from Pothier, and uses in his opinion in the leading case cited in behalf of appellant, (*Child* v. *Starr*, 4 Hill, 369,) the description in the plat is one "where the grant to the riparian proprietor has no other boundary on the side thereof which is adjacent to the river but the stream itself," and so, as he continues, "the legal presumption is, that his grantor intended to convey to the middle of the stream.". (See page 373.) Had it been intended the grantor was reserving to himself the ownership of the entire stream, the plat, to have been accurate, would have had another line, parallel to that indicating the stream, indicating the line of its bank, and, consequently, the boundary line. We are not to assume this plat is not accurate, but must assume that it more fully represents the intention of the parties than the preceding language, so far as fixed monuments are concerned, and that it was made and adopted by the parties because they were not fully satisfied with the language they had employed in that respect. Whatever presumption, then, would have arisen as to the intention of the parties to make the bank of the stream the boundary line, from the mere words employed in the description, is neutralized and overcome by this plat, especially when it is considered in connection with the language we have quoted from the contract of sale. The river being the boundary line, it was a fixed monument on that side, and all inquiry into the distances from the starting point, which is also a fixed monument, to the river, and from the river to other points indicated in the description, is unimportant, for no rule of law is better settled, than in such cases fixed monuments always control courses and distances. *Miller* v. *Beeler*, 25 Ill. 163; *Kamphouse* v. *Gaffner*, 73 id. 453.

This rule is well illustrated in its application to the present case by *Oxten* v. *Graves*, 68 Me. 371, (28 Am. R. 75,) where it was held that a line "to a road, and thence by the road," was evidence of a grant to the center of the road, though the

measurement of the distances given would only extend to the side.

It is also contended by counsel for appellant that the court below erred in refusing to admit evidence offered as to where the meandered line was, with reference to the premises in question. If we are correct in the view expressed with reference to the river, and not its banks, forming the boundary line on that side, there are two reasons why the ruling complained of does not constitute error for which there should be a reversal: First, since it was not claimed, as we understand the evidence, that the defendants trespassed upon the plaintiff by cutting ice beyond the center of the stream, it is not important where the meandered line was. Second, the evidence offered was not original, nor was it even secondary. The drawing made by the witness was, as he testified, from a copy of a copy.

Another objection urged is, that the court improperly excluded evidence of the value of ice in the Desplaines river to men who had facilities there for storage, and also as to the value of ice at the stock yards. The proof fails to show that appellant had any ice house, or facilities for storing ice, near the premises in question, and the true measure of damages was, as laid down in *Washington Ice Co.* v. *Shortall*, 101 Ill. 46, the value of the ice as soon as it had been scraped, plowed, sawed, cut and severed, and ready for removal, and this generally, and not with reference to the particular situation or convenience of one person or another.

The final objection urged as ground of reversal is, that the damages are not assessed high enough. We have carefully examined the evidence, and we are not able to say there is plainly and palpably error in that regard. The amount of damages, from the nature of the article which was the subject of loss, was, in a large degree, matter of speculation. Different witnesses expressed different opinions of the value of the ice at the time and place taken, and it is impossible

to say that the verdict does injustice to the plaintiff on that evidence.

We perceive no cause for disturbing the judgment below. It is therefore affirmed.

*Judgment affirmed.*