## Harry Rubens v. Martha S. Hill.

### Gen. No. 4,383.

1. COMMON COUNTS—*when recovery may be had under.* Where a special contract has been fully performed by the plaintiff and nothing remains to be done but to pay the money due under the contract, a recovery may be had under the common counts; and the special contract is admissible in evidence to prove the amount of plaintiff's claim.

2. COVENANTS OF LEASE—*how, construed.* The covenants of a lease will sometimes be construed in the light of the circumstances surrounding the execution of the lease.

3. REPAIR—*what waiver of covenant to.* The entry into possession and the payment of rent is a waiver of any failure by the landlord to perform a covenant to make certain repairs prior to the entry by the tenant into possession.

4. IMPLIED COVENANTS—*when, not construed into lease.* There is no implied covenant in a lease that the premises demised are reasonably fit for the purposes for which they are let; in the absence of fraud or deceit, the rule similar to that of *caveat emptor* applies.

Action of assumpsit. Appeal from the Circuit Court of Lake County; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

KNIGHT & BROWN and RUBENS, DUPUY & FISCHER, for appellant.

GWYNN GARNETT and EUGENE H. GARNETT, for appellee; CHARLES WHITNEY, of counsel.

MR. JUSTICE VICKERS delivered the opinion of the court. This is an appeal from a judgment of the Circuit Court of

Lake county, in favor of Martha S. Hill, and against Harry Rubens, for $3,547.42, for rent of the premises known as Ravinoaks, in Highland Park, Lake county, Illinois.

The lease was dated February 1, 1902, and provided that the lessee's term should begin April 15, at a rental of $5,000 payable in equal monthly installments. The lease also included all furniture, carpets, hangings and other personal property on the premises, a schedule of which was attached thereto. The demised premises consisted of eighteen acres on the lake front which was divided by a ravine running easterly to the lake into two parts, called the northern and southern. The dwelling house and stable were on the north part, and on the south part, which was made into a sort of private park, stood a brick and stone tower with a windmill on the top; on the beach was another building called a machine house or bath house. The stable was two stories and on the second floor sleeping rooms were fitted up for the coachman or other employees.

Appellant moved into the premises at the commencement of the term and occupied the same until the term expired. He paid two installments of rent and refused to pay the balance and this suit was brought and judgment recovered for the delinquent installments.

The declaration consists simply of common counts, except that there was inserted the ordinary form of consolidated count, and before the conclusion the following: "And in the like sum of money due from the defendant to the plaintiff for rent of certain premises and property of the plaintiff there situated, before that time demised and let by the plaintiff to the defendant at his request."

The pleas were (1) the general issue; (2) a special plea to the count for rent that "after making of the said supposed demise aforesaid, the plaintiff with force and arms, etc., wrongfully and unlawfully withheld from possession of this defendant a portion of the said premises and refused to let this defendant into possession thereof, although often requested so to do, etc., and continually thereafter, until * * * refused to let this defendant into possession

Rubens v. Hill.

thereof," concluding with the verification; (3) a special plea to the count for rent that "The said plaintiff with force and arms, etc., entered into and upon said premises in said count  *  *  *  alleged to have been demised to this defendant and into and upon the possession of this defendant and ejected, expelled, put out, evicted and moved this defendant and kept him so ejected, etc., concluding with the verification; (4) a special plea that the plaintiff wrongfully and unlawfully "entered into and upon the said premises  *  *  *  and into and upon the possession of this defendant and ejected, expelled, put out, evicted and moved this defendant from the possession of a large part of the said premises, to wit, a certain tower and certain engine house or building and portions of a certain barn or stable being part and parcel of said premises  *  *  *  and kept this defendant so ejected, expelled, put out, evicted and moved from the possession thereof from thence hitherto," concluding with the verification.

One of the clauses in the lease is as follows:

"Provided, that on or before April 15th the lessor agrees to cause said premises to be put into a habitable condition and to make the same ready for occupancy  *  *  *  meaning and intending hereby that the boards covering the windows and doors of the dwelling house shall be removed by the said party of the first part, the fixtures connected with the plumbing, and the dwelling house put in condition for occupancy."

Another clause provided that the lessee should "keep said premises in good repair, replace all broken globes, glass or fixtures and keep the premises in a clean, healthy condition as required by the city ordinances, and to yield up the premises at the end of the term in good condition, loss by fire and ordinary wear and tear excepted."

Appellant contends that the court erred in admitting the lease in evidence over his objection. The objection to the lease was that it could not be received in evidence without a special count on the lease, containing averments that the lessor had complied with certain conditions precedent to her right of recovery. This position cannot be sustained.

It is the settled doctrine of the common law, that where a special contract has been fully performed by the plaintiff and nothing remains to be done but to pay the money due under the contract, a recovery may be had under the common counts, and the special contract is admissible in evidence to prove the amount of plaintiff's claim. Pickard & Munger v. Bates & Towslee, 38 Ill. 40; Combs v. Steele, et al., 80 Ill. 101; Gottschalk v. Smith, 156 Ill. 380; Springer v. Orr, 82 App. 558. In 2nd Green. Evid., sec. 104, it is said: " So long as the contract continues executory, the plaintiff must declare specially; but when it has been executed on his part, and nothing remains but the payment of the price in money, by the defendant, which is nothing more than the law would imply against him, the plaintiff may declare generally, using the common counts, or may declare specially on the original contract, at his election." This statement of the law is supported by many cases, both English and American, cited by the author in the foot notes. Here the term had expired and nothing remained to be done by the plaintiff to entitle her to maintain her action for the money. If a right to recover under any form of pleading existed, it was enforceable under the common counts, and there was no error in the ruling in this regard.

It is insisted by appellant that the covenant in the lease first above set out, required appellee to make all repairs necessary to render the premises reasonably habitable, before the commencement of the term; and second, upon the supposition that this position may not be sustained, it is contended that in a lease of a furnished home for a short period, such as a season or summer, there is always an implied covenant or warranty on the part of the lessor that the premises are fit for habitation. We will dispose of these contentions in the order stated.

If the lease is construed to be a general, unrestricted covenant as to habitability the rule *expressum facit cessare tacitum* applies and no implied covenant arises out of the relation of the parties or the subject-matter of the contract. It

was provided in the lease that the party of the first part (the lessor) should cause the "premises to be put into a habitable condition, and make the same ready for occupancy by the said party of the second part on or before the said 15th day of April, 1902; meaning and intending hereby that the boards covering the windows and doors of the dwelling house shall be removed by the party of the first part, the fixtures connected with the plumbing, and the dwelling house put in condition for occupancy." A brief reference to the attending circumstances and the acts of the parties to this contract will throw some light on the interpretation of it. The premises were inspected by the lessee before the contract was made; he went through the dwelling, found the house had been closed during the winter, the doors and windows boarded up, and the plumbing disconnected, the shades and curtains were not hung, the house required airing and the furniture was dusty and disarranged. With this condition before them the parties entered into the lease. The lessor proceeded to perform the covenant and accordingly removed the boards from the doors and windows, connected the plumbing, opened up and aired the house, cleaned the house and furniture, as the woman who did the house cleaning puts it, "from top to bottom," hung the curtains and draperies, thus "putting the house in a condition for occupancy." Whatever the covenant required of the lessor was to be performed before the day the term was to commence. The lessee saw when he moved into the premises how the lessor had performed the covenant, and without objection he paid one installment of rent and went into possession. That we are warranted in bringing the surrounding circumstances to bear upon this lease to show the true intent and meaning which the parties themselves attached to it at the time it was made, is sustained by many cases, among which the following may be cited: Hadden v. Shoutz, 15 Ill. 581; Wilcoxon v. McGhee, 12 Ill. 381; Piper v. Connelly, 108 Ill. 646; Batavia Mfg. Co. v. Newton Wagon Co., 91 Ill. 230; L. & N. R. R. Co. v. Koelle, 104 Ill. 455. Viewed in the light

of the surrounding circumstances, we are of the opinion
that the clause in the lease under consideration cannot be
held to be a general express covenant to put the dwelling
in a first-class state of repair.

The consideration of the second branch of this contention,
respecting the implied covenant, involves a new question
in this state so far as we have been able to learn. The
generally accepted rule of law is that there is no implied
covenant that the premises demised are reasonably fit for
the purposes for which they are let; in the absence of
fraud or deceit the rule similar to that of *caveat emptor*
applies in all such cases. A case often cited by text writers
and judges on this point is Sutton v. Temple, 12 Meeson &
Welsby, 52, decided by the Court of Exchequer in the year
1843. There the demise was of pasture land to be grazed
by the animals of the lessee; he put fifteen beasts on the
pasture and four of them died soon after, and subsequently
others. It was found, upon examination, that particles of
old paint had been mixed with the manure that had been
spread over the land in the spring, and thus the eddish had
become infected with a poison that destroyed the beasts;
the lessee abandoned the possession and notified the lessor
she could do whatever she pleased with the premises. The
jury found that the beasts died from the effect of the paint,
but it was held by all the judges there was no implied cov-
enant that the premises were fit for the purpose for which
they were let, and the lessee had no right to abandon them
and refuse to pay the rent. The authority of this case
seems never to have been questioned either in England or
in this country, but, on the contrary, has received very
general recognition as good law. It is cited in Wood on
Landlord and Tenant, sec. 382, to support the general doc-
trine here under consideration. While we cannot find that
the case has ever been cited by the courts of Illinois, still
the principle has received frequent recognition. Smith v.
Kinkaid, 1 App. 620; Sunasack v. Morey, 98 App. 505; Mc-
Coull v. Herzberg, 33 App. 542; Blake v. Ranous, 25 App.
486; Watson v. Moulton, 100 App. 560; Peck v. Ledwidge,

25 Ill. 93; Smith v. McLean, 123 Ill. 210; Humiston, Keeling & Co. v. Wheeler, 175 Ill. 514. Without questioning the general doctrine of these cases, appellant insists that the case at bar falls within an exception to the rule respecting cases where the demise is of a furnished house for immediate occupancy, contending that in such cases there is an implied covenant or warranty that the premises are reasonably fit for occupancy. This contention is based upon the English case of Smith v. Marrable, 11 Meeson & Welsby, 5. It was decided in 1843, and has had a hard struggle for favorable recognition ever since. In this case Mr. John Smith let to Sir Thomas Marrable the house No. 5 Brunswick at the rent of eight guineas per week for five or six weeks, at the option of said Sir Thomas Marrable, to begin September 15, 1842. On the 16th the lessee moved in with his family, and on complaint of Lady Marrable that the house was infested with bugs, Smith sent a party who made a failure of exterminating the bugs. On the 19th of September Lady Marrable notified Mrs. Smith that owing to the fact that all the beds were infested with bugs, she found it impossible to remain, and that she would pay a week's rent and vacate, which she did. Under this state of facts the court held on appeal that a man who lets a ready furnished house, surely does so under the implied condition or obligation that the house is in a fit state to be inhabited. When, during the same year, the case of Sutton v. Temple, *supra*, came before the same court, difficulties arose as to how to distinguish Smith v. Marrable from the Temple case, Rolfe, B., remarking in the latter case: "The only difficulty in this case is, how to reconcile the decision in Smith v. Marrable with this. My Lord and my brother Parke, however, have pointed out the ground on which that case may be distinguished from this. I think it is very probable that the two cases may be so distinguished, but if not, I should prefer at once to overrule that decision, than to follow it in the present case." The grounds pointed out by Parke and Lord Abinger, upon which the cases were distinguishable, were, that in Smith v. Marrable the letting

was of goods and chattels in connection with the house, and that the goods and chattels were for a special purpose, while in the Sutton-Temple case the letting was of the eddish of a field. The following year Smith v. Marrable was again under discussion in Hart v. Windsor, 12 Meeson & Welsby, 68. In this case the demise was of an unfurnished dwelling house; the lessee abandoned the house for the reason it was not in a fit state for habitation owing to the fact the premises were infested, swarmed and over-run with bugs. The defendant had a verdict on this plea, but the court *en banc* ordered a judgment *non obstante veredicto* on the ground that the plea presented no defense, the opinion being delivered by Parke, who declared the decision in Smith v. Marrable could not be sustained on the ground on which he had rested his judgment. He said that it was not necessary in the case at hand to decide whether Smith v. Marrable be good law or not, since the cases were distinguishable. The doctrine of Smith v. Marrable has not been well received in the United States. In Naumberg v. Young, 44 N. J. L. 345, the court said: " Certain it is that Smith v. Marrable has never been followed except under the precise circumstances under which it was decided, and then only as enabling the tenant to abandon the premises, rescind the lease and defend against the payment of rent." And in a later case, Murray v. Albertson, 50 N. J. L. 167, the same court decided that Smith v. Marrable was bad law and wholly repudiated it even in a case where the demise was a furnished house on the sea shore for only a few months. In Fisher v. Lighthall, 4 Mackey's Rep. (15 D. C.) 82, the court after a review of all the English cases discarded the doctrine of Smith v. Marrable. In New York the doctrine of the case has been held not good law, in a number of cases. See Howard v. Doolittle, 3 Duer, 464; Franklin v. Brown, 118 N. Y. 110. In the case last above cited the Court of Appeals says: " The principle that there is an implied condition or covenant in a lease that the property is reasonably fit for the purpose for which it is let, as laid down in Smith v. Marrable, has been frequently questioned by the courts of

this country and has never been adopted as the law of this state," citing Edwards v. N. Y. & H. R. R. R. Co., 98 N. Y. 248, Cleves v. Willoughby, 7 Hill, 83, and a number of other New York cases. In Carson v. Godley, 26 Penn. St. 111, the English cases are reviewed, and the doctrine of the Smith-Marrable case is wholly rejected, and it is said by the learned judge who writes the opinion that the doctrine has been set aside even by the English court in which it originated; but in this, we think, there is a mistake. The English cases cited as overruling the doctrine do not expressly do so, though many of them express dissatisfaction with the rule. So far as we have been able to ascertain, Massachusetts is the only state in this country that has given the doctrine of this case an unqualified approval. In Ingalls v. Hobbs, 156 Mass. 348, that court adopts the rule laid down in the English case under a state of facts so like the English case, there was no ground for distinguishing them. There the demise was of a furnished house for the season of 1890. The lessee upon discovering that the beds were infested with bugs, abandoned the premises and refused to pay the rent, and his defense was sustained on the authority of the English case. No court has gone further or used stronger terms than the Supreme Court of Massachusetts in applying the general doctrine that there is no implied covenant in the demise of real estate that it is reasonably fit for the purpose for which it is let, as is shown by the decisions in Stevens v. Pierce, 151 Mass. 207, Bertie v. Flagg, 161 Mass. 504, and the late case of Roth v. Adams, decided April 1, 1904, and not yet published in the official reports, (70 N. E. Rep. 445,) thus showing that the doctrine of Smith v. Marrable is only applied under facts precisely like those in the English case and then only as justifying the lessee in abandoning the premises and defending against the rent. We cannot find that the precise question involved has ever been before either the Supreme or Appellate Courts of Illinois. The case of White v. Walker, 31 Ill. 422, is the only case calling for an expression of our Supreme Court respecting the doctrine of Smith v. Marrable that we have been

able to find, and none have been cited by counsel. There the present Chief Justice of the Supreme Court of the United States contended for the application of the doctrine of the English case but the court only went to the extent of using the following cautious language: "The premises were leased for a boarding house, and if they become uninhabitable for such purpose by reason of occurrences subsequent to the leasing, over which the lessee had no control, and which were in some degree instigated by the lessor, the tenant might have had the legal right to quit the premises. The doctrine of Smith v. Marrable * * * would seem to go to this extent." But Justice Breese rested his decision on other grounds and no further reference is made to this doctrine.

We do not think the doctrine of the English case and the Massachusetts court has the support of the weight of authority in this country. It has never been adopted as a part of the law of this state, and with these high authorities against it outside of this state, we shall decline to follow it until our Supreme Court decides otherwise. But the facts in the case at bar do not bring it within the rule of Smith v. Marrable, even if that rule should be held to obtain in this state. Here the lessee continued to occupy the demised premises until the end of his term; here the complaint as to the habitability of the premises related to the leaky roof of the dwelling house, the general dampness of the house in consequence thereof, and the rotten and dilapidated condition of the porch floors. Both in the English and Massachusetts cases, the grounds of the plea related to a condition respecting the furniture and not the building, and in both cases the lessee immediately abandoned the premises upon discovering the nuisance. It would seem that if this doctrine is to apply at all, it ought not to be extended to cases where the defects relate exclusively to the building as real estate, for by all the cases, both English and American, there is never an implied covenant as to the habitability of a dwelling or the reasonable fitness of other buildings for the purpose for which they are let. In stating the grounds

Rubens v. Hill.

upon which the English judges distinguish Smith v. Marrable from other cases of demise of a house it is pointed out that the one is a mixed contract of personalty and real estate, and that the personal property is demised for a special purpose, and hence arises the implied covenant. No case has ever been cited and none found by us, where the lessee remained in possession to the end of the term, and then interposed the defense that the premises were uninhabitable, and none where the demise was of a furnished house which was abandoned because of defects in the house, in the absence of fraud or concealment of the lessor. The ruling of the court at the trial, both in admission of evidence and in giving and refusing instructions, was in accordance with these views and there was no error in them.

It is insisted by appellant that he was evicted from a part of the premises, and therefore is not liable for the rent. This contention is based upon the alleged refusal of the agent of appellee to permit the coachman of appellant to move into the two sleeping rooms of the stable and put a gasoline stove there, which was right off from the hay mow; also in the alleged refusal of appellee's agent to admit appellant into the use of the tower and the machine or bath house on the beach. The determination of the question whether there was an eviction is, under evidence here, purely one of fact. Without discussing the evidence in detail, we will say that the jury was entirely justified in finding against appellant under the evidence.

Other assignments of error, relating to sufficiency of the evidence to support the verdict, error in giving instructions and in refusing instructions asked by appellant, and admitting and rejecting evidence on the trial, have all had our careful attention, and we fail to find any sufficient reason therein for disturbing this judgment. Appellant had the enjoyment of the premises for the full term, and, under certain conditions, was willing to take them for the following year. We think on the whole case the law is with appellee, and that no substantial error has intervened, and accordingly the judgment is affirmed.

*Affirmed.*