(No. 20240.—)

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, vs. WILLIAM B. WATSON, Appellant.

*Opinion filed August 26, 1930—Rehearing denied October 11, 1930.*

B. A. KNIGHT, for appellant.

OSCAR E. CARLSTROM, Attorney General, CHARLES H. GREEN, and HARRY E. WHEAT, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The Department of Public Works and Buildings of the State of Illinois filed its petition in the county court of Stephenson county during July, 1929, seeking to acquire by eminent domain approximately seven and one-half acres of land belonging to William B. Watson for use in the construction of an improved public highway extending north from the city of Freeport and known as State bond issue route ,74. The lands sought to be condemned were designated by petitioner as tracts "C" and "R." The former tract was to be used for road right of way and the latter for borrow-pit purposes. Attached to the petition and made a part thereof were three blue-prints, marked and referred to as exhibits "A," "B" and "C." These blue-prints were drawn to scale, showing the location of the proposed highway and the tracts in question, together with dimensions

thereof and other engineering data. The tracts of land were described as follows:

"A parcel of land (designated as tract 'C') situated in and entirely across, in a longitudinal direction, the east one hundred forty-eight (148) feet of lot six (6) of a subdivision of a part of the southwest quarter (south of the Pecatonica river) of section 30, in township 27 north, range 8 east of the fourth principal meridian, as the same is located and designated on a plat of a part of said section recorded in the office of the circuit clerk of said Stephenson county in book 'A' of plats, page 17, between the west line of said east one hundred forty-eight (148) feet and a new right of way line for State bond issue route 74, which is east of, fifty-five (55) feet normally distant from and parallel to the center line of said route 74 from the north line of said lot 6 to opposite station 775, thence to a point in the north right of way line of the Illinois Central Railroad Company which is eighty (80) feet normally distant from the said center line. The said center line is a straight line divided into stations one hundred (100) feet in length, which are numbered consecutively and increase numerically to the south, and it intersects the north line of section 30, township 27 north, range 8 east of the fourth principal meridian, at station 736/35.3, a point one thousand five hundred ten and six-tenths (1510.6) feet west of a gas pipe at the northeast corner of lot 2 of the northwest quarter of said section 30, and extends south at an angle of 89 degrees 56 minutes, measured clockwise from the said north line. The said tract 'C' contains one and five-tenths (1.5) acres, more or less, and is shown in general and in particular, respectively, on plats or drawings designated exhibit 'A' and exhibit 'B' and by reference thereto made a part hereof.

"A parcel of land (designated as tract 'R') situated in and over the following described lots: Lot five (5) in a subdivision of a part of the southwest fractional quarter (south of the Pecatonica river) of section No. 30, in town-

ship 27 north, range 8 east of the fourth principal meridian. Also lot seven (7) in a subdivision of a part of the southwest quarter (south of the Pecatonica river) of section 30, township 27 north, range 8 east of the fourth principal meridian. For a more particular description of said lot 7 reference may be had to the recorded plat of said subdivision in book 'A' of plats, page 17, in the office of the clerk of the circuit court of said Stephenson county, situated in the city of Freeport. Also the east one hundred forty-eight (148) feet of lot six (6) of a subdivision of a part of the southwest quarter (south of the Pecatonica river) of section 30, in township 27 north, range 8 east of the fourth principal meridian, as the same is located and designated on a plat of a part of said section recorded in the office of the circuit clerk of said Stephenson county in book 'A' of plats, page 17. The said parcel of land is bounded by lines described as follows: Beginning in the north line of said lot 6 at a point fifty-five (55) feet normally distant from and east of the center line for said route No. 74; thence south parallel to the said center line to a point opposite station 775/00; thence to a point in the north right of way line of the Illinois Central Railroad Company eighty (80) feet normally distant from the said center line; again beginning at the intersection of the last described line with a line normal to the said center line at station 780/00 and extending east in the said normal line to a point four hundred eighty (480) feet distant from the said center line; thence north parallel to the said center line to the intersection with a line normal to the said center line at station 777/00; thence west in the last said normal line to a point two hundred thirty-five (235) feet distant from the said center line; thence northwesterly to a point one hundred eighty-five (185) feet opposite station 775/00; thence north parallel to the said center line to a point in the north line of said lot 5; thence southwesterly along the north line of said lot 5 and said lot 6 to the point of beginning.

The said center line is a straight line divided into stations one hundred (100) feet in length, which are numbered consecutively and increase numerically to the south, and it intersects the north line of section 30, township 27 north, range 8 east of the fourth principal meridian, at station 736/35.3, a point one thousand five hundred ten and six-tenths (1510.6) feet west of a gas pipe at the northeast corner of lot 2 of the northwest quarter of said section 30, and extends south at an angle of 89 degrees, 56 minutes, measured clockwise from the said north line. The said tract 'R' contains five and seventy-eight hundredths (5.78) acres, more or less, and is shown in general and in particular, respectively, on plats or drawings designated exhibit 'A' and exhibit 'C' and by reference thereto made a part hereof."

The Pecatonica river flows through the southeast quarter of section 25, township 27 north, range 7 east of the fourth principal meridian, and also through the southwest quarter of section 30, township 27 north, range 8 east, which lies immediately east of section 25. Lots 6, 5 and 7 in the southwest quarter of section 30 are south of the river. Lot 6 is west of lot 5 and is adjacent to the easterly boundary line of section 25. When these lands were obtained from the United States and when a plat of a part of the southwest quarter of section 30 was made and filed in the recorder's office at Freeport, Illinois, about 1870, the river was much wider than it now is and a bayou or branch of the river bordered the northerly side of lots 6 and 5. The record discloses that many years ago the river had two channels near the boundary line of sections 25 and 30, and that a narrow island of more than three acres was between the two channels in section 25 and extended eastward into section 30 and north of lots 6 and 5 here involved. The island was known as Fowler's Island and was conveyed from time to time by different owners thereof. About 1901 a stone dam was built across the river at the west end of the island and the water entering the south channel of the

river was diverted. The bayou or south channel has continued to fill in until it is now dry and all the water of the river flows through the north channel. The present south bank of the Pecatonica river is more than 300 feet north of the location of the south meander line or bank of the old channel of the river.

The owner of the lands sought to be condemned filed five objections to the petition, three of which were later withdrawn. One of the remaining objections was, in substance, that the petition contained dissimilar descriptions, whereby the north boundary of the land sought to be condemned was designated in one place as the Pecatonica river and in another place the north boundary was placed several hundred feet south of the river. The other objection was, that before filing the petition for condemnation the State took possession of the land sought to be condemned and built a bridge on a part of it over the Pecatonica river, and that the petition does not fully define the rights of the land owner in reference to the bridge. A motion was filed to strike these objections for the reasons that the statute makes no provision for the filing of said objections, that the objections referred to matters not contained in the petition and were ambiguous and uncertain. The court reserved its ruling upon the motion to strike, and the cause was heard upon the objections. During the hearing the State was requested by opposing counsel to stipulate just what lands were to be included in the condemnation proceeding. The following stipulation was presented by the State: "It is stipulated that the most northerly red line of petitioner's exhibit 'A' attached to the petition represents the northerly limits we are seeking to condemn for right of way or borrow-pit purposes." Thereafter seven additional objections were filed. The substance of these objections was, that from the stipulation, the petition and the exhibits attached thereto the location of the north boundary line of the land sought to be condemned is uncertain; that peti-

tioner has erroneously adopted the south bank of the old river channel, as is shown by a line so designated on exhibit "A," as the north boundary line of lots 6 and 5; that as a matter of law the north boundary line of lots 5 and 6 is now the same line as the present thread of the main channel of the Pecatonica river; that in seeking to condemn only to the red line mentioned in the stipulation filed, petitioner has omitted and disregarded two acres of ground over which the highway right of way is contemplated and upon which a part of the bridge is being constructed. Motion to strike these additional objections was also filed by counsel for the State. The hearing upon the petition and objections thereto proceeded and oral and documentary evidence was presented. The trial court overruled the objections filed to the petition, and from that order the land owner has perfected an appeal to this court.

It is stated in appellant's brief that objections to the petition and the exhibits attached thereto were filed because of the uncertainty of the location of the lands sought to be condemned, and it is the contention of appellee that under the pleadings the only question presented by the record for the consideration of this court is whether or not the petition describes the land with sufficient certainty. Ownership of the lands described in the petition and designated upon the exhibits attached thereto as tracts "C" and "R" is alleged to be in appellant, and no question has been raised by any proper pleading filed relative to the title to those tracts or to any other lands surrounding them. The descriptions in the petition of the two tracts sought to be condemned refer to a recorded plat in book "A" of plats, at page 17, of the official records of Stephenson county, and to three blue-prints attached to the petition as exhibits "A," "B" and "C." The blue-prints or exhibits are to be considered as a part of and in connection with the descriptions in the petition. (*Piper* v. *Connelly*, 108 Ill. 646; *City of Springfield* v. *Gillespie*, 335 id. 388.) An

examination of the blue-print exhibits discloses that they are drawn to scale and that the location of the tracts is shown thereon. The length and course of the boundary lines and the red line mentioned in the stipulation as the northerly limits of the land sought are plainly designated. The exact location of this red line as being a certain number of feet distant north from the northerly right of way line of the Illinois Central railroad is shown at the intersection of this red line with the west boundary line of tract "C," with the east boundary line of lot 6 and with the east boundary line of lot 5. A straight line drawn through these three definitely established points readily locates any intervening point. This line, or any point in it, can be located by a surveyor with little difficulty.

The plat referred to in the petition as being in book "A" of plats, page 17, shows the Pecatonica river bordering lots 5 and 6 in section 30 on the north. The plat also shows at the northeast corner of lot 5 a mark designated "Pin oak 5 in. in dia. for corner," and the easterly side or length of lot 5 as shown by this plat, from the northerly right of way line of the Illinois Central railroad to the pin oak tree, is approximately the same as the east boundary line of lot 5 as shown on appellee's exhibit "A" from the railroad right of way to the line shown thereon as "original lot lines, south bank of old river channel." The latter line apparently was not used as the north boundary line of the lands to be condemned, as the red line mentioned in the stipulation is located from 100 to 150 feet northerly of the supposed old south bank of the south river channel and is stated to be near the center of the old south channel of the river.

It is unnecessary to consider other points raised and discussed in appellant's brief.

In our opinion the tracts sought were described, designated and shown with sufficient certainty, and the objections to the petition were properly overruled by the county court.

*Order affirmed.*