MARY S. BOYCE, Respondent, *v.* GREELEY SQUARE HOTEL COMPANY, Appellant.

Second Department, December 29, 1917.

Innkeeper — right to enforce rules to prevent immorality or other misconduct by guests — action based on improper entrance by servant into guest's room — damages — physical suffering included in compensatory damages — evidence — letter by managers of defendant to plaintiff's husband — verdict not excessive.

An innkeeper has the right to make and enforce proper rules to prevent immorality or any other form of misconduct tending to injure the reputation of his house, and has the right of access to the room of a guest under reasonable and proper circumstances and at proper times.

But such rule has no application and does not furnish a defense to a cause of action by a guest for damages resulting from the entrance to her room of a hotel detective, where the defendant had notice that the plaintiff and the man who accompanied her to the hotel and to the room assigned her were husband and wife, and also that she was an invalid requiring treatment at times, which had to be given her by her husband, and that a room was given her for the express purpose of permitting her husband to visit her therein, and that he was informed that he might do so.

In such an action physical consequences, including pain which was the direct result and consequence of the breach of duty owing a guest by an innkeeper, are included in and may be recovered as compensatory damages.

A letter written by the managers of the defendant to the plaintiff's husband expressing regret at the offense, was within the scope of their authority and the letter was competent evidence.

Evidence examined, and *held*, that a verdict of $8,000 is not excessive

Jenks, P. J., and Blackmar, J., dissented.

Appeal by the defendant, Greeley Square Hotel Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 28th day of June, 1917, upon the verdict of a jury for $8,000, and also from an order entered in said clerk's office on the 22d day of June, 1917, denying defendant's motion for a new trial made upon the minutes.

*Kenneth C. Kirtland,* for the appellant.

*Benjamin Patterson* [*Henry A. Uterhart* with him on the brief], for the respondent.

Rich, J.:

The circumstances upon which the plaintiff bases her right to recover took place at the Hotel McAlpin, operated by the defendant, in the city of New York, on September 22, 1915. It appears that the plaintiff, accompanied by her husband and daughter, went to the Hotel McAlpin on September 21, 1915, at about seven o'clock in the afternoon. Plaintiff's husband informed defendant's room clerk that he wanted a room for his wife and daughter, whom he registered as " Mrs. Alexander R. Boyce and Miss Florence Boyce." The clerk replied that he would give them a room on the sixth floor, but on being informed by Mr. Boyce that his wife, the plaintiff, was an invalid and needed attention at times which he had to give her, assigned room No. 1508 on the fifteenth floor to them because, as he stated, no men ·were allowed on the sixth floor. He told them that the husband could visit her and give her the treatment required on the fifteenth floor. The plaintiff was conducted to the room assigned her, accompanied by the husband and daughter, where they remained together about an hour and then went to the hotel restaurant, on a lower floor, where dinner was served to them, after which plaintiff's husband went to their home on Long Island, she and her daughter remaining at

the hotel and occupying the room assigned them. The next day, between three and four o'clock in the afternoon, plaintiff and her daughter left the hotel to do some shopping, leaving the key to their room with the floor clerk at the elevator, plaintiff telling her that she expected her husband, and, when he came, to give him the key and tell him to go to the room and she would be back soon. About five o'clock plaintiff's husband reached the hotel. Upon the fifteenth floor he inquired of the floor clerk if Mrs. Boyce was in her room and was informed that Mrs. Boyce was out but had left the key for him. He went to the room and, about half an hour later, was joined by his wife and daughter. Later, they went to the dining room for dinner, after which plaintiff and her husband returned to the room, the daughter remaining on the mezzanine floor. The door to the room was locked, the ventilator closed, and the plaintiff prepared for a treatment by removing her clothing, putting on her night robe and lying on the bed; a douche pan was placed under her hips; her husband proceeded with the treatment, which he had about half finished when there was a knock upon the door and a demand that it be opened or it would be broken in. Plaintiff's husband thereupon, after inquiring who was there and receiving no answer, went to the door, which he unlocked and opened. The defendant's head house officer, Denniston, and his assistant Brazier, were standing in the hall. Mr. Boyce inquired, " Who are you " — " What do you want? " Denniston replied: " I am the hotel detective. You are prostituting this hotel. You are using this place for a whore house." Plaintiff's husband said, " This lady is my wife; I am giving her douches." Denniston replied, " So much the worse, you are under arrest; come along with us." Mr. Boyce replied: " You wait until I get through what I'm doing. I will show you in a moment who I am. I have got commutation and I have got letters." Denniston had entered the room and remained in it while this conversation was taking place, an interval of two or three minutes, and also until after Mr. Boyce removed the douche pan from under his wife's body, and emptied its contents; after doing this, Mr. Boyce put on his coat and accompanied the house officers to the office. Plaintiff testified that in

Second Department, December, 1917.        [Vol. 181.

addition to the conversation quoted, Denniston called her
a prostitute.  On returning to the·room, plaintiff's husband
found his wife in hysterics, complaining of pain in her head,
and very weak, in which condition she remained during the
night.  She was removed to another room on the twenty-
fifth floor, and the following day received treatment from
her family physician, who testified that he found her in a
very nervous, excitable and hysterical condition, suffering
pain, which, as he testified, she has suffered " ever since."
The defendant contends that it had a rule prohibiting a man
from visiting a woman in her room without permission being
first obtained from the manager's office, and the house officers
testified that in what they did they were acting under this
rule, after first ascertaining that there was no slip either
on the floor or at the room clerk's desk giving permission
to any man to visit either of the ladies in room No. 1508,
to whom the register showed it was assigned.  The rule
referred to was not posted in the hotel, and guests were not
informed of its existence.  While an innkeeper has the
right to make and enforce proper rules to prevent immorality,
or any other form of misconduct tending to injure the repu-
tation of his house, or which violates the recognized moralities
and proprieties of life, and has the right of access to the room
of a guest under reasonable and proper circumstances and
at proper times, such rule has no application to the facts
presented by the record in the case at bar, and does not
furnish a defense to the plaintiff's cause of action, for the
reason that the defendant had notice that the plaintiff and
the man who accompanied her to the hotel and to the room
assigned her were husband and wife, and the further fact
that she was an invalid requiring treatment at times, which
had to be given her by her husband; a room was given her on
the fifteenth floor for the express purpose of permitting her
husband to visit her therein, and he was informed that he
might do so.  If any permission was required, it was given.
Furthermore, there was concededly a telephone in plaintiff's
room, and the house detectives admitted that they knew
that fact and that they could have ascertained the relation
of the parties occupying the room and for what purpose
the plaintiff's husband was in her room, without going to

the room at all.   They testified that their purpose in going there was to learn from the man and woman who the man was and for what purpose he was there.

Upon the trial the plaintiff was permitted to prove, over defendant's objection and exception, the physical pain and suffering she endured, at the time of the occurrence and thereafter, as the direct result of the invasion of her room. The trial court was requested to instruct the jury that if they found " that the defendant is at all liable to the plaintiff in this case, then the measure of defendant's liability, if any, will be purely compensatory and not punitive, that plaintiff's right to recover is confined to such injury to her feelings and to such personal humiliation as she may have suffered and to nothing else."   The complaint alleged that because of the acts of the defendant she " suffered pain, shame and anguish."   The court stated that he would not charge " quite in that form," and called the attention of counsel to the fact that there was evidence in the case of physical pain which his request did not embrace, and that if he would include " physical pain " in such request he would charge as requested.   Counsel then requested the further charge that " any other injury except injury to her feelings and such personal humiliation as she may have suffered should be enforced in another action," which request was refused, and an exception taken.   The appellant now contends that the exceptions referred to present reversible error, the argument being that the rule of damages applicable to actions of this character, and the defendant's full liability therein is that the right of recovery is limited and confined by the decision of the Court of Appeals in *De Wolf* v. *Ford* (193 N. Y. 397) " to such injury to her feelings and such personal humiliation as she may have suffered. * * *   That is the extent to which the defendants' liability may fairly be said to spring from their breach of duty.   Any remedy beyond that which the plaintiff may seek to assert must be invoked in a different form of action."   The case cited is not an authority for the proposition that physical consequences, including pain, which are the direct result and consequence of the breach of duty owing a guest by an innkeeper, of the character presented by the record in the

case at bar, are not included in, and may not be recovered as, compensatory damages in an action for the breach of an innkeeper's duty to a guest.   In the case cited the complaint alleged the use by the defendant's servant of vile and insulting language imputing immoral conduct to the plaintiff, accompanying an order to leave the hotel.   Upon the trial the complaint was dismissed upon the ground that no cause of action was therein alleged.   Upon appeal, the Appellate Division of the First Department affirmed the judgment, holding that the complaint alleged no cause of action other than slander, and the alleged defamatory words not being set forth in full, it could not be sustained (119 App. Div. 808).   Upon appeal the Court of Appeals reversed the judgments both of the Appellate Division and Trial Term, and granted a new trial upon the ground that the complaint averred a cause of action for breach of the contract of the defendant innkeeper, in that the plaintiff was entitled to decent and respectful treatment at the hands of the defendant and his servants.   The question of whether the plaintiff in such an action could recover for physical pain and suffering as a direct result and consequence of the breach of defendant's duty towards her, when pleaded, was not presented to the court, and the language quoted was not intended as an assertion that such pain and suffering could not, when pleaded, be considered as elements of the damages recoverable in an action by a guest to recover from an innkeeper for breach of his duty, but simply to distinguish an action founded on such breach of duty from one where slander or assault was the gravamen of the action.   The only case cited by that court in support of its declaration of the general rule of damages (*Gillespie* v. *Brooklyn Heights R. R. Co.,* 178 N. Y. 347) recognizes in its citation of authorities the rule that physical suffering when the direct result and consequence of breach, as in the case at bar, is an element of compensatory damages in an action of this character.   If damages for pain, sickness, physical or mental impairment cannot be recovered in this action, they cannot be recovered at all, for such damages do not create a separate or independent liability, for which an action would lie.   The damages resulting from the transaction herein cannot be divided, and a judgment in this action would bar a further recovery for

additional damages resulting from the same transaction. No authority to which our attention is directed sustains the appellant's contention that the damages which are recoverable in this action are not such as would fully compensate the plaintiff for the pain, suffering, humiliation and impaired health which she suffered and which were the direct result and consequence of the defendant's breach of duty. Plaintiff's recovery in the case at bar was expressly limited by the trial court to compensatory damages. Every other element of damages, including punitive damages and the alleged slander, were excluded, and the verdict represents actual damages, the direct result and consequence of defendant's breach of duty, and is compensatory only.

The plaintiff was permitted, over defendant's objection and exception, to put in evidence the following letter from defendant's managers to plaintiff's husband, written on September thirtieth, a week after the occurrence upon which this action is founded, viz.:

" <i>September 30th</i>, 1915.

" Mr. Alexander R. Boyce,
         " Long Island City, L. I.:

" Dear Mr. Boyce.— We would like to have our Mr. Denniston who so unfortunately gave you offense in the manner he handled the unusual incident of your recent stay at the McAlpin, call to apologize.

" We hope that you will be so lenient as to permit this and we sincerely trust you will be willing to accept the apology. We feel that Mr. Denniston was over-zealous and very mistaken in his attitude toward you. The only extenuation is in our rigid policy of protecting the good name and repute of this hotel in the way explained to you by the writer. If you will kindly take this into consideration and accept Mr. Denniston's apology, we hope you will then feel everything possible in the way of reparation has been done.

" With deep regret that you should have suffered so unfortunate an annoyance, we are,

" Very truly yours,<br>
" MERRY & BOOMER,<br>
" <i>Managers</i>,<br>
" L. M. BOOMER."

Second Department, December, 1917.        [Vol. 181.

The objection was based upon the ground that the letter was " incompetent, irrelevant and immaterial," being written after the hotel occurrence and not binding upon the defendant. It is· contended that the exception taken to its admission presents reversible error, the letter not being written by the defendant or to the plaintiff, but by a person not a party to the action, to plaintiff's husband, also a stranger to the action, and not a part of the *res gestæ* of the matter in suit; that the admission of an agent to bind his principal must be made not only during the continuance of the agency, but at the very time of the transaction in question, so as to form part of the *res gestæ*. The defendant conducts its business as a hotel-keeper by the managers by whom the letter was written. The manager, who wrote for himself and associate, was informed of the transaction by Denniston immediately after its occurrence, and had made an explanation to plaintiff's husband, as appears from the letter. The letter contains no statement or admission of any act claimed by the plaintiff to have been committed by defendant's servants, nor does it admit or deny the same. It is simply an expression of regret that offense should have been given by the manner in which Denniston " handled the unusual incident of your recent stay at the McAlpin; " that the defendant's managers would like to have him call and apologize, and that such apology be accepted as " everything possible in the way of reparation." No " unusual incident " is shown by the evidence to have occurred except that in which both the plaintiff and her husband, the recipient of the letter, were participants. Although directed to plaintiff's husband, the letter was plainly intended to offer an apology, by way of reparation, to both the plaintiff and her husband for the occurrence which gave the offense, without admitting anything connected with the transaction except that it gave offense to the interested parties. It refers to " your recent stay at the McAlpin " as the time of the transaction for which the apology was tendered. It was the plaintiff who stayed at the hotel, not her husband. It is immaterial to whom the letter was addressed, it being apparent that it referred to the occurrence upon which this action is based. In writing the letter the managers of the defendant were engaged in the business of their principal and in the

performance of their duty to it and in its interests; their act was within the scope of the authority, and the letter was competent. (*Stecher Lithographic Co.* v. *Inman,* 175 N. Y. 124.) Furthermore, if I am wrong in this conclusion, the admission of the letter did not harm the defendant or constitute such a prejudicial error as to demand reversal.

It is contended that the verdict is excessive. Twelve men of affairs have assessed plaintiff's damages at $8,000, and the learned and experienced justice who presided at the trial has found that it is not excessive. In these circumstances, any lingering doubt as to whether the verdict was excessive should be resolved in favor of defendant's innocent victim.

It follows that the judgment and order must be affirmed, with costs.

THOMAS and STAPLETON, JJ., concurred; JENKS, P. J., and BLACKMAR, J., voted to reverse, unless plaintiff stipulate to reduce the verdict to $2,500, in which case they vote to affirm.

Judgment and order affirmed, with costs.