SAIDEE DISBROW HURD, Respondent, *v.* HOTEL ASTOR COMPANY, Appellant.

Second Department, March 1, 1918.

Innkeeper — tort — visit of man to room of female guest contrary to hotel regulation — inquiry by manager as to status of parties — facts not establishing cause of action for injury to feelings and reputation — excessive verdict — reasonable rules of innkeeper.

A woman who registered as a guest at a hotel is not entitled to recover substantial damages for alleged shock to her nerves and humiliation because the manager of the hotel, on learning that she received a man in her room contrary to the rules of the establishment, interrogated the plaintiff and her visitor and discovered the latter to be her husband if it appears that the husband went to the plaintiff's room without informing the hotel authorities of their marital status and the plaintiff, after the explanation, was allowed to continue as a guest.

Evidence examined, and *held*, that a verdict for the plaintiff for $2,500 was excessive and contrary to the evidence.

Under the circumstances the defendant's employees had reasonable and probable cause for interrogating the plaintiff and her husband.

The defendant was not put upon notice of the fact that the plaintiff and her husband were man and wife by the fact that the husband, who registered at the hotel after his wife and was assigned to a different room, registered as " Robert C. Hurd " while the plaintiff merely registered as " Mrs. Hurd."

The rule of an innkeeper that men shall not visit the room of a female guest without permission is reasonable and designed to protect the reputation of the hotel and the rights of other guests.

MILLS and RICH, JJ., dissented.

APPEAL by the defendant, Hotel Astor Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Dutchess on the 16th day of June, 1917, upon the verdict of a jury for $2,500, and also from an order entered in said clerk's office on the 15th day of June, 1917, denying defendant's motion for a new trial made upon the minutes.

*George .P. Hotaling*, for the appellant.

*Morschauser & Mack*, for the respondent.

KELLY, J.:

The plaintiff complains that on August 17, 1916, she was a guest at defendant's hotel in the borough of Manhattan, city of New York, and that defendant, through its agents and servants, unlawfully and improperly requested her to leave said hotel, and in the presence of a large number of people, charged and accused her of soliciting men in said hotel and accused her of being a woman who solicited men and improperly and unjustly accused her of soliciting men for improper purposes in such hotel, and then and there in the presence of a large number of people falsely and unjustly accused and charged her with being a lewd woman and having solicited men in said hotel, and requested her to leave said hotel. She alleges that by reason of such improper conduct on the part of defendant's servants she was greatly humiliated and disgraced and shocked and made sick and her nerves seriously affected, and that she was seriously hurt in her feelings and held up to public ridicule and disgrace. The defendant

answering denies the plaintiff's charges that she was accused of soliciting men for improper purposes, or that she was charged with being a lewd woman, or that she was requested to leave the hotel, and also denies her allegation of damage. The defendant alleges that plaintiff on the day mentioned was a guest and had been assigned to and occupied a bedroom in the hotel; that a rule of the hotel forbade the presence of any man in the bedroom of a woman guest when the room was not occupied by husband and wife, unless special permission was first obtained at the hotel office; that defendant had provided parlors for the use of women guests unmarried or unaccompanied by their husbands, where they might receive their male friends, and that the incident which is the subject of the plaintiff's complaint was brought about by the violation of this rule by plaintiff and her husband; that plaintiff's husband, without any notification to defendant or identification either by plaintiff or any one else, and without permission obtained at the office, entered plaintiff's bedroom, closed the door and engaged in conversation with her; that the violation of defendant's rule was reported to the hotel office, and that when one of the hotel employees was proceeding to call plaintiff's attention to such violation, he met the plaintiff, who came out of her bedroom into the hall accompanied by a man who had not been assigned to the room; that on inquiry being made the plaintiff stated that the man was her husband; that the employee thereupon stated that he regretted having spoken to her at all about the matter. Defendant denies that plaintiff was requested to leave the hotel, and, on the contrary, alleges that she continued as a guest until the following day, when she paid her bill and left.

An examination of the record leads the court to the opinion that the verdict of the jury in this case is contrary to the evidence, and the damages awarded are so excessive that it is clear that the interests of justice demand a new trial.

There is no evidence that plaintiff was requested to leave the hotel, or that defendant's employee accused her of soliciting men or with being a lewd woman. There is no pretense or claim that anything of the kind took place. The incident of the inquiry by defendant's assistant manager was brought

Second Department, March, 1918.          [Vol. 182.

about entirely by the somewhat remarkable conduct of the plaintiff's husband and the plaintiff herself. The husband went to a floor in the hotel set apart for bedrooms, knocked on the door of the room occupied from the preceding day by his wife and a woman friend, and was admitted and the door closed. He says he was brought there by a bellboy, but he does not explain where or how he met the bellboy, or how he induced him to conduct him to the bedroom. Such action on the part of the bellboy would have been contrary to the hotel regulations, and defendant has no record of any such transaction which should have been recorded under the rule. But the husband makes no claim that he disclosed his identity or relationship to the bellboy or to any one else. He says he came to the hotel, checked his bag in the coatroom, did not register, and that the bellboy brought him to his wife's bedroom. The plaintiff, on arriving at the hotel the preceding day, had received a letter from him telling her that he would probably come there, but on the evening in question she says she first knew of his arrival when she heard a knock on the door, opened it and saw her husband with a bellboy. There had been no previous announcement of his arrival over the phone or in any other manner. After remaining in the room for some time, the two ladies and Mr. Hurd went to dinner in the roof restaurant of the hotel, and, having dined, came down to the main office floor on Broadway about nine o'clock, where they sat for some time. The plaintiff then returned alone to the bedroom, leaving her husband conversing with her friend and companion. Up to the time plaintiff left her husband, he had not intended to remain overnight in the hotel. He had not registered, but during her absence he changed his mind, left the other lady, proceeded to the desk, registered "Robert C. Hurd, Pawling, New York," and was assigned to a bedroom on the same floor and in the same hall about four or five doors away from the room occupied by the plaintiff and her friend. The husband makes no claim or pretense that in registering at the office he informed the clerk that he was the husband of one of the ladies who had registered the previous day and who were then guests at the hotel. This is the more remarkable because the plaintiff says that when, coming out of her room, she discovered him in the

corridor, she greeted him, " ' Hello. Where did you come
from? ' I said ' Why didn't you get the one next to us? '
He said ' I couldn't. It was taken.' I said ' Get in a minute.
I want to speak to you.' He stepped inside the room, leaving
the key on the outside of the door, and stood up at the foot of
the twin beds, probably five or six minutes, chatting. Then
Mr. Hurd locked the door and we went down the side corridor."
They went to the elevator and the plaintiff continues: " A
man in summer evening dress stepped out with a dinner jacket
on, accompanied by another man, and, as Mr. Hurd stepped
back to let me step in, he said ' One minute. Who are you? '
He said that to Mr. Hurd. Mr. Hurd replied, ' I am Robert
Hurd, of Pawling.' He said ' And this woman? ' And then
I became, of course, very much frightened. Mr. Hurd said
' Is my wife, Mrs. Hurd.' He said ' She has been accused of
soliciting you. It has been reported she has been soliciting
you.' I was very much frightened and sank down in a big
chair in the corner. Then I produced our cards — Mr.
Hurd's and mine. He said ' We knew, of course, there were
only two ladies in room 136, but it was reported to me that
one of them came out of the room, ran after a man, and,
after some argument, succeeded in inducing him to enter
the room with her, but, of course, if it *is* Mrs. Hurd and
you *are* Mr. Hurd, that put a different face on it.' " She
says the man emphasized the words " is " and " are." Mr.
Hurd's story of the occurrence is that as he came out of his
bedroom he saw his wife come out of her room about to lock
the door, " and I come along and she said ' How do you do '
or ' Hello, where did you come from? ' I said I had decided
to stay all night, and I had a room here. Q. Had she pre-
viously requested you to stay? A. Yes, and I thought I
ought to go home. As I come along, she said ' Come in here
a minute. I want to speak to you.' And I opened the door
or she opened it — I don't know which — and we went in."
He then describes the occurrence which is the basis of the
action. " We  *  *  *  were about to step into an elevator,
when a man approached me and said ' Who are you? '  *  *  *
· I said, ' I am Robert Hurd, of Pawling.' He said ' And this
woman? ' I said ' That is Mrs. Robert Hurd of Pawling.'
He said ' It has been reported that this woman solicited you

Second Department, March, 1918.    [Vol. 182.

and took you into her room.' I was pretty mad, and I think I told him a few things right there, if I remember rightly. Q. What did Mrs. Hurd do? A. She dropped down in a chair. I said that I had traveled around some, but that was the first experience of that kind that I had ever had. * * * She produced the cards soon after he asked that question, out of her handbag. I didn't happen to have any with me. I know I didn't have any with me. He looked a kind of puzzled when she produced the cards. He said ' If you *are* Mr. Hurd and this *is* Mrs. Hurd, that is different.' "

Now, this is the transaction which is the basis of the action and because of which the jury has awarded the plaintiff $2,500 damages. Later in the evening the plaintiff, who had informed her friend and companion of the occurrence, went to the desk in the office and inquired for the manager. The same man reappeared, and the plaintiff says her companion asked him " if we looked like that kind of women that would run after men and solicit them, and he said of course, we didn't." But there was nothing in the interview on the first floor, brought about on plaintiff's solicitation, which would constitute any legal grievance. Plaintiff, at the instigation of her friend, asked for an explanation, although she really knew the explanation from what had been told her upstairs. What was said on the first floor was in answer to her inquiry, and we cannot find any discourteous language or any basis for complaint in what took place there. The manager explained that the chambermaid on the bedroom floor had reported that there were only two ladies in room 136, that one of them came out of the room, that a man had come from the other end of the hall and that the woman " grabbed " him by the arm and, after some argument, forced him to remain and succeeded in inducing him to enter the room with her. He did not use the word " solicit " downstairs; he explained that there was a dental parlor at the end of the hall in which the bedroom was located; that men were going there at all hours of the day and night, and they supposed Mr. Hurd was one of the patrons of that place. The plaintiff says her feelings were hurt, that she was made very nervous, humiliated and insulted, especially in front of her friend, who was a new acquaintance

and a stranger in New York. It will be remembered that the lady who was plaintiff's companion was not present at the occurrence on the bedroom floor, and knew nothing of it until told by the plaintiff, and that the subsequent interview on the office floor was on the suggestion of this lady. Mrs. Hurd says she did not sleep that night. She got up several times " and took aromatic ammonia and several things, and woke up with a splitting headache." She felt very bad and very nervous the next day, and it continued down to the time of the trial.

But on the evening of the occurrence, after the interview with the manager downstairs, which must have been at about ten o'clock according to her own evidence, she and her husband and the lady friend " got a taxicab to get the air. We went up to the Majestic Roof Garden and watched the dancing for some little time." Plaintiff and her friend returned to the defendant's hotel and remained there overnight. The husband, who had caused all the trouble, left there and went elsewhere. Next day the two ladies had breakfast in their room, the husband of her friend arrived, the ladies went out and did some shopping, the party met Mr. Hurd at another hotel and had luncheon, and in the afternoon at three o'clock the room was given up. The testimony of plaintiff 's companion related to the interview with the manager downstairs. Plaintiff's husband does not appear to have taken part in it. He explains that he was too angry to speak. He said he would not sleep in the hotel if he had to sleep on the street. He gave up his room, for which no charge was made, and left the hotel. His wife, the plaintiff, remained, however, with her friend. The story of the defendant's witnesses, the manager, the chambermaid on the floor, who was not in defendant's employ at the time of the trial, and a watchman, who had also left defendant's employ, differed materially from the evidence of plaintiff and her husband as to the transaction on the bedroom floor. The chambermaid testified that she saw the man go in the room assigned to, and occupied by, the two ladies from the previous day, and, knowing that it was a violation of the rules of the hotel, she was proceeding to telephone to the office when she met the manager. She told him of the occurrence, they went up in the hall outside the room, and

Second Department, March, 1918.          [Vol. 182.

heard the voices of a man and woman apparently quarreling.
The manager went downstairs to verify the chambermaid's
story that there were two ladies and no man guest assigned to
the room. While he was downstairs, the chambermaid says
the man came out of the room, plaintiff came out after him
and brought him back, and a little later the two came out and
proceeded towards the elevator, where they were met by the
manager returning. The manager denies using the word
" solicit " or " soliciting." He says he explained that it was
reported that there was a gentleman in room 136, and as there
were two ladies registered there he thought he would make
it his business to find out who the gentleman was. He
explained the rule to them, and that they expressed themselves
as entirely satisfied. He testifies that the rule is in force in
practically all hotels of good repute in New York city. The
hallman corroborated him.

Now, if we disregard the evidence of the defendant's
witnesses, and take the story as told by the plaintiff, her
husband and her friend, it would seem that the defendant's
employees had reasonable and probable cause for everything
they did, even as related by the plaintiff. It cannot be
disputed that the rule and regulation referred to is eminently
necessary, reasonable and proper. In fact, Mr. Hurd, whose
disregard of the regulation brought about all the trouble,
admits that such a rule was " all right " and reasonable. In
these great metropolitan hotels covering large areas, caring
for thousands of guests, such regulation is essential for the
protection not only of the reputation of the hotel, but as well
of the decent men, women and children who may resort to
them. And neither the plaintiff, her husband or companion
could or do make any claim that they were so guileless and
inexperienced that they did not appreciate this fact. The
occurrence may have been unpleasant, but what was the
defendant bound to do on the facts as disclosed by plain-
tiff and her witnesses? If the chambermaid saw the
occurrence exactly as testified to by Mrs. Hurd and
her husband, the man unknown to the chambermaid com-
ing out of his bedroom, the lady simultaneously coming
out of her own room which she had occupied from the
preceding day with another woman, going up to this man

and greeting him as he says, " ' How do you do,' or ' Hello, where did you come from? ' " or, as she says, " ' Hello. Where did you come from?  *  *  *  Why didn't you get the one next to us?  *  *  *  Get in a minute, I want to speak to you,' " was not the chambermaid justified in reporting this to the office? Would she not have been open to criticism and complaint if she had not done so? The subsequent results may have been annoying, but the defendant, while it owed a duty to Mrs. Hurd, owed duties to the other decent people in the hotel as well. And if we take the story of Mr. and Mrs. Hurd, and disregard the testimony of the manager, who said it had been reported that the lady solicited Hurd to go to her room, there is absolutely no basis for the charge in the complaint that the manager suggested that plaintiff had asked or solicited any one else to go to her room. And was not this exactly true, according to the evidence of the plaintiff and her husband? Of course the defendant's witnesses deny the use of the word " solicit," but assuming that the plaintiff and her husband are right, was not the statement justified? There was no charge of lewdness, there was no request that the plaintiff leave the hotel. The conversation must be taken as a whole, and the reason for the inquiry by the manager was part and parcel of the occurrence. If the plaintiff was made nervous, shocked or humiliated, it was by the discovery that she and her husband had, perhaps unwittingly, violated a reasonable, decent regulation, and exposed themselves to inquiry. But is it right to charge this on the defendant? There is not a word of evidence in the case that Mr. Hurd ever told any one that he was related to one of the two ladies in room 136, or that he identified himself in any way with them. From the standpoint of the defendant in the management of its sleeping rooms, he was a stranger to them. It is true that the plaintiff says she arrived at the hotel the previous day and registered as " Mrs. Hurd." It is true that two envelopes were shown to the manager on his cross-examination, although not introduced in evidence, which bore a stamp showing that they had passed through the mailing department of the hotel, one addressed to " Mrs. R. C. Hurd, Hotel Astor," and the other to " Mrs. R. Campbell Hurd, Hotel Astor," and that Mr. Hurd testified that he registered

about ten o'clock on the night of the occurrence " Robert C. Hurd, Pawling, New York," but it is unreasonable to hold that the defendant was put on any notice of relation of man and wife by these incidents. They might have some significance in a small hotel, in a boarding house or in a village or rural community. But in these metropolitan hotels, with several guest registers in use at one time and different registers from day to day it would seem very far-fetched to impute notice to defendant from this occurrence justifying the presence of a man in a room assigned to and occupied by two women. If a man visits a hotel in which his wife is a guest and desires to meet her and visit her, surely the obvious, decent thing for him to do, for the protection of all concerned, is to announce his relationship. And if he for some reason, or through carelessness, omits to do so, can he complain if the hotel managers object to his presence in the bedroom of the woman?

So it seems to us that the verdict of the jury in this case, in finding that the defendant violated its duty to the plaintiff, is without evidence to support it; that, on the contrary, the evidence shows that the inquiry was brought about entirely by the violation by plaintiff and her husband of the reasonable rules of the defendant, and that in taking notice of the apparent violation of the rule and in making the inquiry the defendant was performing its duty not only to the plaintiff, but to the other guests in the hotel, who resorted to it relying on the enforcement of such rules. We believe that to penalize the defendant in a case of this kind in $2,500 damages can only result in bringing about a lax enforcement of regulations necessary for the protection of the men, women and children who may resort to, or live in, hotels in these great cities, by choice or force of circumstances. The principles of law governing the parties have been stated by the Court of Appeals in *De Wolf* v. *Ford* (193 N. Y. 397), and more recently by this court in *Boyce* v. *Greeley Square Hotel Co.* (181 App. Div. 61). The business of an innkeeper is of a *quasi*-public character, invested with many privileges and burdened with correspondingly great responsibilities. He is bound to respect the convenience, privacy, safety and comfort of his guests. He is bound to courtesy and respectful treatment in caring for them, and is responsible in damages

for violation of this duty. But, of necessity, he cannot perform this duty if every guest is a law to himself. He is entitled to the co-operation of the guest. The Court of Appeals says in the *De Wolf Case* (*supra*) that the innkeeper is under a corresponding duty to the other guests at his hotel " to make and enforce such reasonable rules as may be designed to prevent immorality, drunkenness, or any form of misconduct that may be offensive to other guests, or that may bring his inn into disrepute, or that may be radically inconsistent with the generally recognized proprieties of life. To these reserved rights of the innkeeper the guest must submit." It was disregard of this obviously fair principle of the law by the plaintiff and her husband that brought about the unpleasant incident which is the subject of this action. There is a marked difference between the conduct of the innkeeper complained of here and that complained of in the *De Wolf* and *Boyce* cases cited. Here there was no intrusion on the privacy of plaintiff's room. The conversation took place in the hall. It was not conducted in an offensive or abusive manner. If the word " solicit " was used, the accompanying language shows the sense in which it was used, and negatives the innuendo asserted by the plaintiff. There is no proof of damage to the plaintiff justifying an award of $2,500, and it is evident that the jury, although instructed that any damage awarded must be compensatory and not punitive, disregarded the instruction and that they must have been moved by prejudice or passion. We think that the verdict of the jury that the defendant here was responsible for the occurrence was against the evidence, and the verdict is so excessive that we think it should be set aside and a new trial granted.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., and BLACKMAR, J., concurred; MILLS and RICH, JJ., voted to affirm.

Judgment and order reversed and new trial granted, costs to abide the event.