## Marie R. Rice, Appellee, v. Warner Hotel Company, Appellant.

## Gen. No. 21,327.

1. INNKEEPERS—*when evidence sufficient to support finding in favor of plaintiff as to occurrence of accident.* In an action for personal injuries, alleged to have been caused by falling window glass, broken from the upper sash of a window, which struck violently against the upper casement as the plaintiff attempted to raise it, *held* that the conclusion that the accident happened as claimed by plaintiff is not contrary to the clear preponderance of the evidence.

2. INNKEEPERS—*what are duties of towards personal safety of guests.* While an innkeeper is not an insurer of the safety of his guest, the law places upon him the duty of using reasonable care to see that the room to which a guest is assigned is safe, which duty includes that a reasonable inspection be made from time to time.

3. INNKEEPERS—*what degree of care required to secure safety of guests.* While it cannot be said that an innkeeper is bound to use the same degree of care as a common carrier, the relation of innkeeper and guest imposes upon the former a duty to use a very high degree of care to secure the safety of the latter.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. INNKEEPERS—*when unsafe condition of window question for jury.* In an action against an innkeeper for damages, alleged to have been caused by the falling of window glass on the plaintiff, the question as to whether the window was in an unsafe condition, *held* for the jury.

5. INNKEEPERS—*when manner of happening of accident is evidence of unsafe condition of window.* In an action for damages, alleged to have been caused by the falling of window glass on the plaintiff, the manner of the happening of the accident as described by the plaintiff, *held*, apart from any application of the doctrine of *res ipsa loquitur*, to strongly corroborate evidence offered in her behalf that the window was in an unsafe condition.

6. APPEAL AND ERROR, § 1408*—*when verdict not disturbed as unsupported by evidence.* A jury's finding as to the cause of an accident cannot be disregarded by the Appellate Court where it cannot say that their finding is clearly contrary to the weight of the evidence.

7. INNKEEPERS—*when possibility of ascertaining defective condition of window by inspection is question for jury.* In an action for injury to a guest in a hotel, alleged to have been caused by the falling upon her of window glass, due to the putty holding the glass becoming deteriorated through age, the question whether such condition could have been known to the defendant if proper inspection had been made, *held* for the jury, and their finding thereon not against the manifest weight of evidence.

8. INNKEEPERS—*when question of negligence in failing to repair window is question for jury.* In an action for injuries to a guest in a hotel, alleged to have been caused by the falling upon her of window glass, due to the putty holding the glass becoming deteriorated through age, the question whether the failure of the proprietor to remedy such condition, if found by him to exist, was negligence, *held* for the jury, and their finding thereon in favor of the plaintiff not against the manifest weight of the evidence.

9. DAMAGES, § 115*—*when verdict for personal injuries not excessive.* A verdict for $4,500, found in favor of a female guest in a hotel who was cut on the arm by falling window glass, *held* not excessive.

10. INSTRUCTIONS, § 151*—*when properly refused.* It is not error to refuse to give instructions the substance of which was given in other instructions.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed October 18, 1916.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

CALHOUN, LYFORD & SHEEAN, for appellant; EDWARD W. RAWLINS, of counsel.

WINSTON, PAYNE, STRAWN & SHAW, for appellee; EDWARD W. EVERETT, of counsel.

MR. JUSTICE GOODWIN delivered the opinion of the court.

By this appeal the appellant seeks to reverse a judgment against it for $4,500, recovered on account of personal injuries which were alleged to have result-ed from its negligence. Upon a former appeal [187 Ill. App. 317] a judgment for the same amount was reversed and remanded because of improper questions put to the veniremen by counsel for appellee, and because of the admission of expert testimony in regard to a matter which this court held to be one of common knowledge.

The material facts were substantially as follows: Appellee was a guest at appellant's hotel, which consisted of two buildings, the larger known as the Warner Hotel, and the smaller, as the Warner Annex. She had been stopping at the former for some months, but two days prior to the time of the accident, moved to a suite of rooms in the latter. She returned to her room on the afternoon of the accident, and found a window had been lowered about a foot and a half from the top. The window consisted of two frames, each of which held a large single pane of glass puttied in from the outside in the usual way with putty and zinc points. Each pane was fifty inches wide by thirty-three and one-half inches high, and was of double thickness. The appellee stated that in order to close the window she stepped on the sill and started to push it up with her right hand; she was five feet and one and one-half inches tall, and while she could reach the top of the sash when standing on the sill, she could not reach

the top of the window when closed. She had, she said, never had occasion to close it before. At first, when she pushed it, the window seemed to stick; it then started up with a "bang," as though it exploded, and the glass flew out cutting and injuring her right arm at and about the elbow. Some of the cuts were so deep that they had to be sewed up. About two and one-half inches above the elbow on the back of her arm was a deep straight-in transverse cut about two and one-half inches long; below the elbow was another straight-in cut. There were also two cuts running lengthwise on the back of the arm above the elbow several inches long; one of these, however, was an operative cut or scar. Appellee made no examination of the window after the accident, but stated that it looked like an ordinary window. She said that the break in the glass extended clear to the woodwork in places; that there were jagged edges of glass left in the window around the break; in the lower part of the window there were jagged edges standing up about three or four inches high; these had blood on them.

A nurse called in her behalf testified that on the afternoon of the accident she examined the window, and that most of the putty was off and the rest appeared to be decayed and old looking; that it was black from age. She noticed that there was some glass on the floor, some pieces being small and some large.

One Mabel Mecke, a friend of appellee, who called during the afternoon or evening of the accident, testified that the putty on the sash where the glass had not fallen out was "breaky," cracked and crumbled looking, and did not seem especially new or in good condition. She did not observe whether any zinc points or tips were in the window; all she did was to stand on the floor and look out.

For the appellant, a former manager of the hotel testified that he did not notice the putty, but the glass

left around the edge of the sash was solid; he took hold of some of the pieces of glass to see if he could pull them out, and could not.

The hotel carpenter testified that he took out all the loose glass he could with his hands; that there was a lot of glass still in around the edges which was solid; he broke this off down to the putty; he found that the putty was in good condition, and had to use a chisel and hammer to chisel out the putty. There were zinc points made of three-cornered pieces of zinc put in to hold the glass in place which were puttied over; that the putty around the edges was hard; that the older it gets the harder it gets; that good white putty with linseed oil will last a life time. He found the framework of the window in good condition; that putty exposed to the weather crumbles when it has not been painted; that it would begin to crumble in a year or so if it is not taken care of.

A chambermaid testified that there were three or four or five pieces of glass on the floor about two inches by one and a half; that that was all the glass there was in the room; that the break in the glass was not very big.

A railroad porter who was a bell boy at the time of the accident testified that when he came into the room after the accident, he saw a chair tilted against the window sill and moved it over and set it against the north wall of the room; that he saw the break in the glass; thought one-third of the window must have been gone; did not notice any glass on the floor at all; the window appeared to be in good condition. He said he could not see the putty unless he went and investigated, as it was on the outside. Another porter said that he swept up a good sized shovelful of glass from the sidewalk. The housekeeper did not testify in regard to the condition of the putty, but did testify that a chair was lying on the floor in front of the window when she came in.

The former manager of the hotel also testified that he went to appellee's room immediately after the accident, and that she told him that she got upon a chair to push up the window; that her hand slipped and went through it. This was denied by appellee. His wife testified that she called on appellee after the accident, and appellee said it was not the hotel's fault (this was denied by appellee and the nurse who was present at the time); she did not give any testimony in regard to the condition of the putty. Medical testimony was also received in regard to the extent of the injuries.

It is contended by appellant, at the outset, that the manifest weight of the evidence shows that appellee was injured by falling from a chair and forcing her elbow through the window, and not in the manner testified to by her. Appellant's counsel contend that the position and character of the cuts show that they could not have been made by falling glass. Upon a careful consideration of the evidence, however, we are of the opinion that this contention rests entirely upon supposition and speculation. There is certainly nothing in the fact that the cut was at the back of the arm which contradicts appellee's story. The back of her arm above the elbow was as likely to be exposed as any other portion, particularly if she instinctively moved it to protect herself from falling glass. It is impossible for us to say what and how deep cuts would be inflicted by double-thick glass falling from a broken window in the manner described. Nor do we think that the fact, if it is a fact, that the greater portion of the glass fell outside rather than inside shows that the glass was broken by a blow from within. If glass were broken in the manner testified to by appellee, namely, by reason of the window frame striking violently against the upper part of the casement, it would be impossible to say what portion would fall outside.

One might reason that if the break came from a blow from the inside, all of the broken pieces would fall outside, but this, in turn, would be mere idle speculation. We, therefore, do not think that this part of the testimony throws any helpful light upon the case. The fact that there was blood on the lower part of the edges of the glass has some tendency to support appellant's contention, although that fact is obviously not necessarily inconsistent with appellee's story. Appellee is, however, directly contradicted by the then manager of the hotel, who testified that she stated that it happened in the manner claimed by appellant. We do not think that this is materially strengthened, however, by the testimony of his wife (which was contradicted by appellee and one other witness), to the effect that appellee stated that it was not the hotel company's fault, as such a statement would be, at most, a conclusion of law. Upon a review of the entire testimony on this point, we are unable to say that the clear preponderance of the evidence shows that the accident did not happen in the manner described by appellee.

The next contention of appellant is that the facts disclosed form no basis upon which appellant's liability could be predicated. Appellee obviously recovered upon an alleged breach of appellant's duty as an innkeeper to see that the premises were in a reasonably safe condition. An innkeeper is clearly not an insurer of the safety of his guests, but the law does place upon him a duty to use reasonable care to see that the rooms to which a guest is assigned are safe. The degree of care required of him has not been accurately defined nor perhaps finally determined, but certainly it includes reasonable inspection from time to time. Upon the question of the scope of an innkeeper's duty to his guest, the United States Circuit Court of Appeals, in *Trulock v. Willey* [112 C. C. A. 1], 187 Fed. 956, said, at page 958:

"The relation existing between an innkeeper and his guest is much like that existing between a common carrier and its passenger, and, while not an insurer of the personal safety of the guest, the proprietor of the hotel is held, and ought to be held, to the exercise of a very high degree of care for the protection of his guests against the negligent acts of servants employed therein."

The court there does not say, and we do not wish ourselves to be taken as saying, that an innkeeper is bound to use the same degree of care as a common carrier, but we do think it is clear that the very circumstances surrounding the relationship of innkeeper and guest impose upon the former a duty to use a very high degree of care to secure the safety of the latter.

The question of the condition of the window, upon which there was a decided conflict of testimony, was one of fact for the jury, and if appellee's story of how the accident happened is to be accepted (and as indicated above, the state of the record does not permit us to reject it), then, entirely outside the doctrine of *res ipsa loquitur*, the happening of the accident itself, in the manner appellee described, tends strongly to corroborate the evidence offered in her behalf to show that it was in an unsafe condition. We are, therefore, of the opinion that we are not at liberty to say that the jury's conclusion that the accident happened as the result of causes alleged by appellee is clearly contrary to the weight of the evidence, and, in such circumstances, the repeated decisions of both this and the Illinois Supreme Court prohibit us from disregarding it.

The question remains as to whether the condition of the window as testified to by appellee and her witnesses would have been known to appellant if proper inspection had taken place, and, if known, was sufficient to warrant an inference of negligence in not causing it to be remedied. This, like the question just

discussed, was an issue of fact which was properly submitted to the jury by the court through the giving of specific instructions. The jury's verdict for the appellee, therefore, also determined that question in her favor, and, as just indicated, we are not at liberty to set aside this finding unless it be contrary to the manifest weight of the evidence. An examination of the testimony shows that the hotel had been built some six or seven years, and had been in the hands of appellant some considerable time before the happening of the accident, and it is further apparent that the conditions testified to, if they existed at all, must, from their very nature, have existed for a long time prior to the occurrence complained of. We are, therefore, of the opinion that the jury's conclusion in this regard is not contrary to the manifest weight of the evidence.

The reasoning of the court in *Davis v. Diamond Carriage & Livery Co.*, 146 Cal. 59, in which recovery was had for an accident resulting from the breaking of a windowpane, is in harmony with the conclusion we have reached here. There, it was contended that the accident happened in a way and from a cause that could not have been reasonably anticipated by the defendant. In answer to this, the court said, at page 61:

"We cannot say, as a matter of law, that the defendant has exercised ordinary care to prevent injury to its servants when there is evidence tending to show that an examination of this window from the outside would have disclosed its dilapidated and dangerous condition. That it was dangerous the result shows; and we think, as the jury seem to have thought, that the danger might have been discovered by the men in charge of the stable by the exercise of ordinary care, and that it was negligence not to exercise such ordinary care. Whether the plaintiff was also negligent was again a question for the jury. If they believed his version of the matter they were warranted in finding that he was not negligent, and we must presume in support of the verdict that they took his statement as true."

Rice v. Warner Hotel Co., 201 Ill. App. 530.

We are also unable to agree with counsel's further contention that the verdict was clearly excessive.

Appellant contends that it was error to refuse instructions twenty-five and twenty-six, which it tendered. The substance of these instructions was, however, fully stated in instructions nine and ten, and as the courts have severely condemned the repetition of the same instruction in different forms, the court did not err in refusing to give them. Nor do we think the court's modification of the ninth instruction was subject to objection, although it seems to have been unnecessary. There were two directly conflicting theories in regard to the manner in which the accident happened; both could not be true. If the jury believed that the accident happened on account of an accidental fall against the window, and not as appellee charged in her declaration, then she could not recover, and this they were clearly told in the instruction.

For the foregoing reasons, the judgment of the Circuit Court will be affirmed.

*Affirmed.*