John J. Miller, Administrator of the Estate of Donald Miller, Deceased, Appellee, v. Lawrence McHale, Appellant.

Gen. No. 35,101.

Opinion filed November 24, 1931.

CASSELS, POTTER & BENTLEY, for appellant; RALPH F. POTTER, KENNETH B. HAWKINS and GEORGE C. BUNGE, of counsel.

ROYAL W. IRWIN, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

In an action for damages for the negligent killing of plaintiff's intestate in an automobile accident in the Village of Wilmette, Illinois, on the afternoon of October 9, 1929, there was a trial before a jury in January, 1931, resulting in a verdict and judgment against defendant for $7,000. The present appeal followed.

Plaintiff's declaration consisted of four counts. The first alleged in substance that on October 9, 1929, defendant possessed a motor vehicle which he caused to be propelled over Lake avenue, an east and west highway, at and near the intersection of 17th street in said village; that plaintiff's intestate was a small boy and was then and there rightfully passing over said highway in the exercise of ordinary care for one of his age, intelligence and experience; and that defendant then and there, "through his servants and employees," negligently caused said vehicle to run into and strike plaintiff's intestate, resulting in severely injuring and killing him. In the second count the charge is wilful and wanton negligence. In the third and fourth counts the respective charges are the negligent propelling of the vehicle at a dangerous rate of speed without giving warning of its approach, and the negligent propelling through a residence portion of an incorporated village at a speed of 30 miles an hour. In the three last mentioned counts it is also alleged that defendant did the negligent acts "through his servants and employees" or "by and through his servants."

Defendant filed two pleas, (1) general issue and (2) a special plea that he (defendant) "did not then and there possess, operate, propel, run or cause the vehicle to strike plaintiff."

On the trial eight witnesses testified for plaintiff as to the details of the accident. Three of the witnesses

were John Jordan, Clarence Steffens and Raymond Steffens, all boys under 18 years of age and passengers in the automobile which was being driven at the time by Lawrence McHale, Jr., about 17 years of age and the son of defendant. During the introduction of plaintiff's evidence defendant admitted that he was the *owner* of the automobile and that the State license for it for the year 1929 was in his name. This, however, was the extent of the admission,—defendant contending that he was under no liability to plaintiff because his son was not driving the car as his agent or servant. At the conclusion of plaintiff's evidence defendant moved for a directed verdict in his favor but the motion was denied and an exception taken. Thereupon defendant introduced certain documentary evidence and called two witnesses—one of whom was his said son. Defendant did not himself testify. He was not in the automobile at the time of the accident. At the conclusion of all the evidence defendant again moved for a directed verdict but the motion again was denied and an exception taken. Thereupon the attorneys for the respective parties made their arguments to the jury and the court gave to the jury certain instructions, some of which were submitted by defendant.

The following facts in substance are disclosed: The automobile had been purchased by defendant several years before the day of the accident and had been used by members of the McHale family for their convenience and pleasure, with the knowledge and consent of defendant. Lawrence, the son, had been accustomed to drive it to and from the New Trier high school, where he was a student. The school was about three miles from the McHale home, which was in Wilmette. During the afternoon Lawrence, accompanied by John Jordan, a fellow student at the school, left the school and, after driving to Evanston on an errand, returned to Wilmette and went to Jordan's home on Washing-

ton street, opposite the home of the Steffens boys. Soon the Steffens boys appeared and got into the automobile. All four boys were neighbors and friends. Clarence Steffens took a seat in front and to the right of Lawrence, who was in the driver's seat. Raymond Steffens and Jordan seated themselves in the rear seat. While thus seated they chatted and visited together. Soon the village siren or fire whistle blew and shortly afterwards the boys heard a fire engine traveling on Lake avenue, about two blocks away. They all decided to go and try to find where the fire was and witness it. Lawrence, who was at the wheel, drove the automobile east on Washington street, thence north on 16th street and thence west on Lake avenue. As it was crossing 17th street and moving westerly on Lake avenue, at a rapid rate of speed, and at about six o'clock p. m., all testified that they felt a jar and Lawrence stopped the automobile alongside the north curb about 60 feet west of 17th street. After they had alighted all discovered, for the first time as they testified, that the car had struck Donald Miller, a boy under 7 years of age and who was attempting at the time to cross Lake avenue, on the west crosswalk of 17th street, *with,* but not on, his tricycle. They found Donald's body lying in the street about 20 feet back of the automobile. Donald died before he reached the hospital to which he was taken. It further appeared in substance from the testimony of two police officers of the village (plaintiff's witnesses) who arrived at the place of the accident shortly thereafter, that they found a little tricycle underneath the front of the car, "wedged in between the axle and bumper," and which tricycle was taken out; and that they observed several marks on the pavement of Lake avenue "like something sharp scraping on the road," which were "not skidding marks," from the west crosswalk of 17th street and for a considerable distance to the west

thereof. It further appeared that Lake avenue was a paved highway in good condition and much traveled upon, had about a year before been designated by ordinance as a "through street," and that "stop signs" were erected at all cross streets; that just prior to the accident Donald Miller, his older brother, Robert, and two other boys, had been standing at the southwest corner of the two streets, waiting to cross Lake avenue; that the east and west traffic then was rather heavy; that suddenly Donald "dashed across like a flash" with his tricycle to his left; that Robert called to him to come back; and that just as he was turning to do so he was struck by the automobile.

The sole ground for the reversal of the judgment, as urged by defendant's counsel, is that the court erred in not granting defendant's motions, made at the close of plaintiff's evidence and again at the close of all the evidence, for a directed verdict in his favor. After carefully reviewing the evidence, and considering recent decisions of the Supreme Court of this State, we feel constrained to hold, and do hold, that said motions should have been granted, and that, notwithstanding the driver's negligence which apparently was the proximate cause of the deceased's death, defendant is not liable in this action to plaintiff, for the reason that said driver of defendant's car was not at the time defendant's servant or agent, but was using the car for a purpose or pleasure of his own, though with defendant's consent.

In the recent case of *White v. Seitz,* 342 Ill. 266, decided in December, 1930, the facts are similar to those in the present case. After discussing the prior decisions in *Arkin v. Page,* 287 Ill. 420, *Graham v. Page,* 300 Ill. 40, and *Gates v. Mader,* 316 Ill. 313, our Supreme Court says in part (pp. 271–273):

"These three are the cases which announce the law in this State, and they establish these propositions:

That a parent is not liable for the tort of his minor child merely from the relation; that the owner of an automobile who merely permits another to use it for his own purposes is not liable for the negligence of the person so using it; that the owner of an automobile is not liable for an injury occasioned by the negligent use of the machine by his servant if the servant was at the time at liberty from the service of his master and not engaged in doing his master's business but was pursuing his own interests exclusively; and that the relation of master and servant is not established between the owner of an automobile and his minor son by the mere fact that the father purchased the machine for the pleasure of the family and that he permitted his son to use it for his own pleasure.

"There had been, and still was, much conflict in the decisions of the courts of different States on the questions involved in what has come to be known as the 'family purposes' doctrine in regard to automobiles at the time the *Arkin* case was decided at the April term, 1919, as is indicated by the two opinions in that case, and there was also some difference of opinion as to where the weight of authority lay, as the opinions also indicate. Since that time numerous decisions have been made in many States on the questions which have arisen in a great variety of cases on different states of fact. It can hardly be said that the result has been to clarify the situation. . . . On one thing the decisions seem to be agreed,—the principle that liability for the tort cannot be based upon the relation of parent and child. But in some cases, if not many, the statement of the principle is accompanied by an argument based on the greater danger involved in the use of the automobile than of other means of transportation, its excessive weight, its possible speed, the difficulty of collecting the judgment of minors or others whom the owner may have permitted to use the ma-

chine, and it has been suggested that the dictates of natural justice require that the owner of an automobile should be responsible for its negligent operation, because only by so doing, as a general rule, can substantial justice be attained, and that the practical administration of justice between the parties is more the duty of the courts than the preservation of some esoteric theory concerning the law of principal and agent. Of course, this is a frank and complete abandonment of the relation of master and servant as the basis of liability of the owner of an automobile driven by another by the owner's permission, and it seems to be an abandonment of the principle of the administration of justice between man and man according to the orderly process of the law regulated by established rules, esoteric or otherwise. The use of the automobile on public highways is subject to the police power of the State, which has been exercised in this State by the passage of the Motor Vehicle Act and other acts. That power, however, is legislative and not to be exercised by the courts. The reasoning of some of the opinions in this connection seems appropriate enough for consideration in relation to proposed legislative action but not as the basis of a declaration of a new rule governing judicial action.

"In the *Arkin* case the driver of the car was a minor son of the defendant using the car exclusively for his own purposes of pleasure or business but not for his father in any way and the father was held not liable for his negligence. There is a conflict among the decisions on this question. . . . The arguments have been stated, the conclusion heretofore announced by this court is clear, and no new reason appears which should induce a change of view. . . . There is a greater volume of decided cases than when the *Arkin* case was decided but the conflict of opinion is no less. We considered in that case all the arguments presented

and we have reconsidered them in the light of the cases since decided. We adhere to the views there expressed.''

In the more recent case of *Andersen v. Byrnes,* 344 Ill. 240, decided on similar facts in April, 1931, the decision and holdings in the *Arkin* and *White* cases are discussed and followed. And the court said in conclusion (p. 245): ''The doctrine known as the 'family purpose' doctrine, in the courts which follow it, is not the law in Illinois. Under the rules thus announced there is no liability on the part of the plaintiff in error (defendant).''

In the present case plaintiff's counsel here contends in substance that because during the introduction of plaintiff's evidence defendant admitted the *ownership* of the car, a prima facie case, or presumption, of liability on his part was shown, necessitating the cause being submitted to the jury, and that, hence, the trial court did not err in refusing defendant's said motions, made at the close of plaintiff's evidence and again at the close of all the evidence. We find no merit in the contention. After defendant's admission of ownership of the car was made, it appeared from the uncontradicted testimony of some of plaintiff's witnesses, as well as from defendant's witness (his son), that at and before the time of the accident the son was not driving the car as defendant's servant, or on a business of defendant, but solely for a purpose or pleasure of his own. And we think what is said and held in *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387, 395–7 (italics ours) is applicable: ''Different views have been expressed by some of the courts whose decisions have been cited, on the question whether *mere ownership* of the car and its operation by the owner's servant show a prima facie case of liability of the owner for damages following an accident caused by negligent operation, without proof that the operation

was in the master's business and within the scope of the servant's authority. If we assume, however, for this case (what we do not decide), that a prima facie case is made as claimed by the defendant in error's (plaintiff's) counsel, *it does not follow that the case must necessarily go to the jury,* and the motion to direct the verdict did not present a question of law.'' After stating certain language in *Shannon v. Nightingale* (321 Ill. 168, 176), relied upon by the plaintiff in the *Nelson* case, and further stating that ''this language was too unguarded and should be qualified,'' the court in the *Nelson* case continues: ''The question is whether there is evidence to sustain *every element* of the plaintiff's case *necessary to be proved* to sustain the cause of action.'' The court then referred to the case of *Lohr v. Barkmann* (335 Ill. 335, 340), and, quoting from that case, said (p. 397): *''Presumptions* are never indulged *where established facts exist.* They supply the place of facts. When evidence is produced which is contrary to the presumption, the presumption *vanishes entirely.''* (See, also, *Bollenbach v. Bloomenthal,* 341 Ill. 539, 547.)

Equally without merit, in our opinion, is plaintiff's counsel's further contention that because, after said motions for a directed verdict had been denied, defendant by his attorney argued to the jury the question of the negligence of the driver of the car only, and thereafter requested the court to give certain offered instructions on the issue of his negligence only, defendant took an inconsistent position and waived his right to here assign error on the denial of said motions. In *Nosal v. International Harvester Co.,* 187 Ill. App. 411, 412, it is decided that after an adverse ruling on a motion for a peremptory instruction, a defendant may proceed with his defense on the theory of the law adopted by the court without waiving his right to have said ruling of the court reviewed on

appeal. There are numerous other decisions to the same effect by our courts of review. (*West Chicago Street R. Co. v. Liderman,* 187 Ill. 463, 468; *Chicago Union Traction Co. v. O'Donnell,* 211 Ill. 349, 350–1; *Illinois Cent. R. Co. v. Swift,* 213 Ill. 307, 313; *Cutler v. Gardiner Metal Co.,* 225 Ill. App. 497, 500–1.) In the cited *Swift* case, decided before the amendment to section 81 of the Practice Act was made in 1911, our Supreme Court said (p. 313): ''The motion for a peremptory instruction presents a pure question of law, and, in the event of an adverse ruling, an exception preserves that question of law for the consideration of an appellate tribunal. After that adverse decision the defendant may argue to the jury that its guilt is not shown by a preponderance of the evidence, which is purely a question of fact, and the submission of that question of fact to the jury by instructions offered by the defendant does not waive the question of law already passed upon by the court where the defendant's rights have been properly preserved. This has been the universal practice in this State for many years and will not now be disturbed.''

For the reasons indicated the judgment of the circuit court, appealed from, must be and is reversed for errors of law on the part of the trial court.

*Reversed.*

KERNER and SCANLAN, JJ., concur.