Edna S. Fonyo, Appellee, v. Chicago Title and Trust Company, Appellant.

Gen. No. 40,076.

Opinion

filed June 30, 1938.

GEORGE C. BLISS, of Chicago, for appellant.

WALKER BUTLER and JACOB G. GROSSBERG, both of Chicago, for appellee.

Mr. Justice Matchett delivered the opinion of the court.

In an action in trespass on the case for damages on account of personal injuries by reason of the alleged negligence of defendant, and upon trial by the court, there was a finding for plaintiff with damages assessed at $6,000 and judgment thereon from which defendant appeals.

The declaration was filed September 10, 1931. The occurrence upon which the suit was based took place January 20, 1931. November 29, 1933, the demurrer of defendant to plaintiff's original declaration was sustained and leave was given to file an amended declaration, which plaintiff filed December 7, 1933. A demurrer to this declaration, consisting of three counts, was overruled. Defendant filed the general issue and a special plea that it was not in possession of the premises, etc. December 20, 1937, during the trial of the cause, a second amended declaration was filed by leave, and also defendant was permitted to file a plea of the statute of limitations to the second amended declaration. Plaintiff demurred to this plea and the demurrer was sustained. The cause went to trial on the pleas of the general issue and the special plea that defendant was not in possession of the premises with results as heretofore stated.

Defendant contends that the court erred in sustaining the demurrer of plaintiff to the plea of the statute of limitations and that the judgment should be reversed for that reason. The facts are that plaintiff and her husband were at the time of the occurrence in question occupying an apartment of four rooms under an oral lease (so the pleadings aver) from month to month, with an arrangement by which defendant (also orally) promised to keep the apartment and its furnishings in repair. Plaintiff alleged defendant did not keep the furnishings in repair or repair the same as it agreed to

do; that a carpet (a part of the furnishings leased) was permitted to become worn and torn to such an extent that there was a large hole in it; that it remained unrepaired, and that on the date in question plaintiff tripped on this hole and was thrown to the floor, injuring her.

The original declaration did not allege that plaintiff at the time of the occurrence was in the exercise of due care, and defendant contends that the first amended declaration which supplied this supposed defect in the pleading was not filed until after the action was barred by the two-year statute of limitations, Ill. Rev. Stat. 1937, ch. 83, sec. 15 [Jones Ill. Stats. Ann. 107.274], which was applicable to this kind of cases. This matter of practice and pleading is now controlled by section 46 of the Civil Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 170; Jones Ill. Stats. Ann. 104.046], but at the time of the occurrence complained of, and when the suit was brought, section 39 of the old Practice Act, as amended in 1929, was applicable. Section 39 of the old act was construed by this court in *Zister v. Pollack*, 262 Ill. App. 170 (contrary to the contention now made by defendant) it being held that under the statute the second declaration which described the same occurrence as the first, related back to the time of the filing of the first declaration. Certiorari was denied by the Supreme Court. Section 46 of the new Practice Act was construed by this court in *Metropolitan Trust Co. v. Bowman Dairy*, 292 Ill. App. 492, and the judgment in that case has been affirmed in 369 Ill. 222. It is there held that the real test in such cases is whether the transaction or occurrence set forth in the amended pleading was the same as that set up in the original pleading. The decisions of the Supreme Court restores the practice to that which prevailed at common law in England and under earlier decisions of our own State construing former practice acts. *Teutonia Life*

*Ins. Co. v. Mueller,* 77 Ill. 22; *Litchfield Coal Co. v. Taylor,* 81 Ill. 590; *Chandler v. Frost,* 88 Ill. 559; *McCall v. Lee,* 120 Ill. 261; *Bearecroft v. Hundreds of Burnham* (1695) 3 Lev. 347, 83 Eng. Rep. 723; *Chisly v. Becket,* B. R. Hill, 2 W. & M. Rot. 432; *Maddock q. t. v. Hammet* (1796) 1 T. R. 55, 101 Eng. Rep. 851; *Cross v. Kaye,* 6 T. R. 543, 101 Eng. Rep. 693; *Jones v. Corry* (1840) 6 Bingh. N. C. 247, 133 Eng. Rep. 99; *Crawfurd v. Cocks* (1851) 6 Exch. 287, 155 Eng. Rep. 551; *Curne v. Malins* (1851) 6 Exch. 803, 155 Eng. Rep. 770; *Cowburn v. Wearing,* (1853) 9 Exch. 207, 156 Eng. Rep. 88; *Doe d. Rabbits v. Welsh* (1846) 15 J. J. Q. B. 312. These cases disclose that "the harsh and scholastic rule as to amendment in relation to the statute of limitations . . . is an artificial creation of the courts," which has "no support in the English common law." In the *Maddock* case, Lord Kenyon said:

"This is an application to the discretion of the court; and in these cases we must take care that the plaintiff shall not unnecessarily hang his action over the head of the defendant: but no such conduct is imputable to the present plaintiff and the case last cited (*Cross v. Kaye,* 6 T. R. 543, 101 Eng. Rep. 693) is an authority in point for our granting the plaintiff leave to amend, though the time limited for bringing a new action is expired; inasmuch as the amendment prayed for is not to introduce a new substantive cause of action, but merely to rectify a mistake in setting out the notes."

In the *Jones* case, Erskine, J., said:

"As to the objection that the defendants would be able to plead the statute of limitations to a fresh action, and that therefore the plaintiff ought not to be allowed to include the whole of his demand in this, the courts have allowed amendments to prevent the statute of limitations from attaching, but I never heard of them refusing an amendment in order to give effect to that statute. . . ."

Maule, J.: "The right to amend should be more indulgently viewed, where the statute of limitations is likely to apply. . . ."

In *Doe d. Rabbits v. Welsh,* it appears counsel argued: "If this amendment is allowed it will have the effect of depriving the defendant of his defense under the statute of limitations; and a party who asks for such an amendment ought to shew the court that no injustice will arise from its being granted." To which Wightman, J., answered: "I think you ought to show that injustice will arise, for the effect of refusing this application would otherwise be to deprive the lessors of the plaintiff of their mortgage security."

The distinction is between the technical cause of action on the one hand and what Lord Kenyon speaks of as the substantive cause of action on the other. It is only when the substantive as distinguished from the technical cause of action is interfered with by the amendment that there is any room for allowing the statute of limitations to apply either under the common law or under section 46.

Defendant calls our attention to *First Nat. Bank v. Dolton,* 288 Ill. App. 85. Upon examination we find it distinguishable in that, as we there stated, the cause of action was in its nature distinct and different from that stated in the subsequent declaration. We hold the court did not err in sustaining plaintiff's demurrer.

In the second place defendant contends that the relationship between plaintiff and defendant was not such as to impose upon defendant a legal duty to keep the leased apartment in repair distinct from its contractual agreement, and it appeals to the rule of law said to obtain in this and most other jurisdictions to the effect that a landlord is not liable for personal injuries to a tenant or member of the tenant's family where the injury occurs on the leased premises by reason of a violation of an agreement of the landlord

to keep the leased premises in repair. It is argued, therefore, that plaintiff neither alleged nor proved a cause of action, and that plaintiff could not recover. The material facts are as follows:

In the spring of 1929 defendant was in possession and control of an apartment hotel formerly known as the South Shore Club Hotel and afterward as the Orlando Hotel; the building was a 16-story structure and contained 148 apartments. Plaintiff interviewed Mr. Phillips, the then manager of the hotel, with reference to taking an apartment; she says he first wanted $165 but they offered $150 a month, and finally Phillips called by 'phone and told them they might have the apartment for $155; they had looked at a number of apartments and liked this one; the apartments were furnished and the furnishings were discussed with Mr. Phillips; plaintiff says more than once she said by way of question to him, "Now, you will certainly keep the furniture and carpets in as good condition as they are now?" and he said "Yes, that is our business." Plaintiff had him move out some of the chairs and put in different ones and bring lamps which she liked better than the lamps in the apartment, and she says, "He fixed everything that I asked." She also says that Phillips said he would keep the apartment in first class condition. Plaintiff and her husband moved into the apartment and were there for a little more than two years, the rent in the meantime having been reduced to $140 a month. The floors in the apartment were covered with a carpet owned by the hotel, and the carpet remained there until plaintiff's accident on January 20, 1931. Plaintiff says it is the same carpet that was there "when I leased the apartment in 1929." Other furnishings were a davenport, chairs, twin beds, lamps, dining table, chairs in the dinette, a stove and ice box. There was a small table in the kitchenette furnished by defendant; defendant also

furnished dishes, knives and forks but plaintiff had some silver of her own. In connection with the dinette there were linens furnished by defendant; the electric current operating the frigidaire and furnishing light was furnished by defendant; linens, pillow slips and spreads were also furnished by defendant. Plaintiff received mail regularly at the desk located in the lobby. Mr. Phillips was manager; there were different clerks employed by defendant and none of them by plaintiff; there was a lobby in the hotel which was changed while plaintiff was there; there was a drug store in the front part; defendant's general help was in charge of the lobby. Plaintiff did not know the character of other tenants in the building but supposed they were like herself; how they came there she did not know, but some people came and stayed awhile in the summer as summer guests. She had two telephones, one her private 'phone and the other a hotel 'phone; the hotel 'phone was operated from the switchboard downstairs by a girl employed by defendant.

Defendant also furnished plaintiff maid service: she employed none of these personally; the maids visited the apartment each day, made up beds, swept and dusted and cleaned the bathroom; they could go into the apartment when she was not there, as they had pass keys. When plaintiff left the apartment for a time she usually left her key at the desk; sometimes she forgot and took it with her. Defendant furnished gas and water; prior to January 20, 1931, pieces of furniture were taken out and exchanged; two chairs were exchanged and one fixed; plaintiff talked with the housekeeper about some repairs to a chair; she told the housekeeper she wanted these chairs either fixed or new chairs; the chairs were gettting worn and the housekeeper changed them for her; the houseman took the chairs out; she saw housemen around, how many she did not know; the hotel had maids, bellboys,

porters, clerks, telephone operators, a housekeeper and a manager; two maids were assigned to plaintiff's floor.

Prior to January 20, 1931, plaintiff had a conversation with the manager or housekeeper with reference to the condition of the premises; this was the first time she talked to anybody about the carpet; she mentioned this first to the maid (named Anna) and mentioned the hole in the carpet and told her to tell the housekeeper she would have to do something about this hole, and Anna said she would; the hole had just appeared in the dinette carpet which was at the entrance from the kitchenette into the dining room. Anna said she would have it fixed, but plaintiff did not hear anything more about it; she then spoke to the housekeeper who said she would come in and see about it, but did not come, so plaintiff called her again and insisted on her coming; she came, saw the worn hole in the carpet and said she would have it fixed the next day, but did nothing further; plaintiff then went to the manager, Mr. Phillips; he expressed surprise that the carpet had not been fixed and said he would attend to it immediately; after that a man came up to see plaintiff about the carpet, inspected it and said he would make a report. Plaintiff did not hear from him again; thereafter nobody came up to fix the carpet, and she went down to the office of Phillips and told him if he did not fix it she would move; that she could not live there with it in that condition; he told her he would see about it right away; the day before the accident he sent up a man who tried to fix the carpet. On the same day, while in the company of a friend with whom she was to have lunch, she saw Mr. Phillips in the lobby and told him she would have to move if the hole was not fixed; he asked her if the hole had not been fixed and she said, ''No.'' Thereafter a man came up and tried to sew the carpet; he had threads and tools and was

there about 15 minutes; he said it was impossible to fix it and he would report back to the management; no one else came.

The next day in the afternoon she was at home with three friends who were visiting her; they played bridge; she went into the kitchen to get some coffee to serve to her guests; she had a tray in her hands and as she started out through the dinette her heel caught in the hole and she fell on her left side and on her left foot; she did not leave her apartment for three weeks and was seriously injured.

Plaintiff occupied this apartment for nearly two years prior to the accident; during that time she cooked her own meals. The apartment consisted of a dinette, kitchen, bedroom and parlor; it was apartment number 611; she continued to occupy this apartment until March following the accident. The carpet was fastened down; once before the accident she had caught her foot in this hole in the carpet; she did not try to sew up the tear.

The cases which consider the liability of a landlord upon his covenant to repair are collected in 8 A. L. R. 765, in an annotation to *Collison v. Curtner,* 141 Ark. 122, 216 S. W. 1059, and in 68 A. L. R. 1194, in an annotation to *Jacobson v. Leaventhal,* 128 Me. 444, 144 Atl. 281. The general rules applicable have been stated in *Cullings v. Goetz,* 256 N. Y. 287, in an opinion by Judge Cardozo.

The law of New York and the majority rule in England and this country is there said to be that "a covenant to repair does not impose on the lessor a liability in tort at the suit of the lessee." The opinion states that there are authorities to the contrary and that the American Law Institute now adheres to the minority rule, Restatement, secs. 227 and 357. The Appellate Court of Illinois followed the majority rule in *Cromwell v. Allen,* 151 Ill. App. 404, which has been

quoted with apparent approval by the Supreme Court in *Oppenheimer v. Szulerecki,* 297 Ill. 81. However, no case has been cited in which the Supreme Court has directly passed upon this question. In *Mikusz v. Kahn,* 207 Ill. App. 258, and *Revell v. Illinois Merchants Trust Co.,* 238 Ill. App. 4, and the recent case of *Breazeale v. Chicago Title & Trust Co.,* 293 Ill. App. 269, this court has followed the rule laid down in the *Cromwell* case. It is quite true that there are contradictory expressions to be found in these and other Appellate Court cases; all are distinguishable, and in the absence of a ruling by the Supreme Court we deem it unnecessary to pass upon the question, since we are agreed that on the uncontradicted evidence plaintiff was guilty of contributory negligence which precluded a recovery. We cannot agree as plaintiff contends, that the judgment should be affirmed on the theory that the relationship between plaintiff and defendant was that of innkeeper and guest or at least guest and lodging-house keeper. The declaration in every count alleges the tenancy of plaintiff from month to month under an oral leasing. We find no suggestion therein of any other relationship, nor is such relationship established by the evidence above recited. *White v. Maynard,* 111 Mass. 250; *Foster v. Merril,* 124 Mass. 534; *Shearman v. Iroquois Hotel & Apt. Co.,* 85 N. Y. S. 365; *Hackett v. Bell Operating Co.,* 169 N. Y. S. 114; *Pullman Palace Car Co. v. Smith,* 73 Ill. 360; *Rubens v. Hill,* 115 Ill. App. 565. However, on the uncontradicted evidence we hold as a matter of law that plaintiff may not recover because of lack of proof that at and prior to the time she received her injury plaintiff was in the exercise of due care for her own safety. The testimony bearing on that issue was furnished by plaintiff herself. It appears therefrom that plaintiff was perhaps more than any other aware of the condition of the carpet. No person knew the danger better than

she. She says she actually tripped upon the carpet shortly before the day on which she received her injury. It also appears that the man sent to repair the carpet told her that the hole could not be repaired. Plaintiff could easily have avoided all danger either by attention to her steps or by taking the simple precaution of covering the hole in the carpet. Plaintiff was not in the position of a transient guest at a hotel nor of a lodger in a lodging-house. She was a permanent tenant, familiar with the premises.

It would serve no useful purpose to discuss the cases cited on the point of plaintiff's contributory negligence. Under the facts as narrated by her, we think all reasonable persons must agree that plaintiff was negligent and that her negligence contributed to the unfortunate accident by which she was injured. On this point it is sufficient to cite *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270; *Day v. Talcott,* 361 Ill. 437, and *Martin v. Surman,* 116 Ill. App. 282.

Plaintiff cites many cases from other jurisdictions and one from Illinois,—*Hayward v. Merrill,* 94 Ill. 349, where a guest at a hotel fell into an unguarded opening. All are distinguishable. In Illinois the plaintiff must affirmatively prove due care.

The judgment is reversed.

*Reversed.*

McSurely, P. J., and O'Connor, J., concur.