Maude D. Duncan, Appellee, v. Chelsea Hotel Company, Appellant.

Gen. No. 43,180.

Heard in the second division of this court for the first district at the October term, 1944. Opinion filed May 29, 1945. Released for publication June 14, 1945.

ROSS, BERCHEM & SCHWANTES, of Chicago, for appellant.

DAVID ALSWANG and LEE W. CARRIER, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an action brought by Maude D. Duncan against the Chelsea Hotel Company, a corporation, to recover damages claimed to have been suffered by her as she was lowering an In-A-Door bed in her room in the hotel. A jury returned a verdict in favor of plaintiff for $1,000, upon which judgment was entered. Defendant appeals.

Defendant's motions for a directed verdict and also its motion for judgment notwithstanding the verdict were overruled. Defendant states in its brief that it does not seek a new trial; that its position is, that taking all of the evidence most favorable to plaintiff, together with all the reasonable inferences to be drawn therefrom, there is a complete failure of proof to sustain the jury's verdict and the judgment entered thereon, and that a judgment should be entered here in favor of defendant.

Plaintiff contended in the trial court and contends here that the relationship of defendant and plaintiff was that of innkeeper and guest and imposed upon defendant a high degree of care. Defendant contended in the trial court and contends here that plaintiff was a tenant and not a transient hotel guest, and that the law that governs an innkeeper and guest case has no application to the instant proceeding. In our view, we may assume, solely for the purposes of this appeal, that the relationship of defendant and plaintiff was that of an innkeeper and guest, it being understood, however, that she was a permanent guest and not a transient guest.

Plaintiff testified that she was sixty-nine years old, and a widow; that she had lived at the Chelsea Hotel for going on seven years; that she first occupied room 240, which had a Murphy In-A-Door bed; that for the

last three years she has lived in room 340, where the accident in question occurred; that her occupation is that of a beautician and she did all her work in her room; that there was a Murphy In-A-Door bed in room 340 during the entire time she occupied it; that when she was not using the bed she would lift it up and put it away in a closet; that the accident happened on May 24, 1941; that about six months before that date she called up the office of the hotel "because the bed just came down too quick"; that she told the clerk in the office that she could not use the bed because it was out of order; "it came down too quick"; that they sent a house man named Gene to her room and he fixed the spring of the bed; that he took one of the springs out and put in another one, an old rusty one; that he carried the springs in a basket and she saw that it was a rusty one that he put back in the bed; that the bed never did work right, that "it just came down too quick"; that she made complaints to the hotel about two or three times and they would send the house man and he would do the same thing, take the old spring out and put in another old spring in its place; that he never did anything more to the bed than that; that the last time he did anything to the bed was about a month before the accident; that at that time she complained that the bed was coming down too fast and the house man came to her room and put in another old spring; that she "asked him why he didn't put in a new one, he said he couldn't put in a new one because they wouldn't give him a new spring, he would have to use the old ones"; that after the house man fixed the bed the last time the bed still came down fast; that she made other complaints to the clerk that the bed was coming down too quickly; that on May 24, 1941, about 11 o'clock p. m., after she pulled the bed down three or four inches it just came down on top of her and pinned her under the bed until 5 o'clock in the morning; that she was unconscious; that it fell

down on top of her; that she had pulled the bed down about three or four inches before it came right down on her; that she was right flat underneath the bed and could not get out; that she did not remember a thing after the bed struck her until morning, when she came to, and she was still under the bed. The witness then described the injuries she sustained and the treatments given her by several doctors. She further testified that the first person she saw after the accident was Mrs. Lurie, who came in about noon; that Mr. Herbst, the manager of the hotel, came in not long after Mrs. Lurie and he had the bed taken out and sent her a doctor. Upon cross-examination the witness stated that she had no place of business other than her room in the hotel; that she had been using a Murphy bed for several years before the accident; that she did not want a stationary bed in the room because she gave facials in the room during the daytime; that during the month before the accident she used the bed every day and every day she noticed that there was something wrong with it ''because it kept coming down on its own accord and I was afraid it would hurt me, the bed kept falling down. It never fell down by itself. It only would come down when I started it down. The bed would fall on me''; that she continued to use it during the month before the accident; that she never requested to have a stationary bed put in the room, and that the Murphy bed when closed was in a closet; that she would open the closet door, pull the bed out and pull the feet out too; that she ''would grab it from that hook across the thing there and pull it right down toward me. I stood in front of the bottom of the bed and pulled the bed toward me. As I pulled it toward me I would back away. You couldn't stand on the side of the bed and push it down, not with those beds. As to whether I ever took hold of the bar on the side of the bed, you couldn't do that with these beds. When I stood in front of the bed I could reach the bottom bar while

standing on the floor. I never stood up on the iron ledge and pulled the bed to give it a start. When I would start the bed down I would continue to hold it. Then I would walk away backwards as I let it come down. On this particular day I started the bed down and continued to hold it. I pulled the bed just as I had been doing for several years before. It didn't fall, it came down in a hurry and pinned me under the bed. When the bed started down I had a hold of it. I fell right on my back, it threw me sidewards, that's all I can tell you. I don't know another thing. I didn't trip over anything when I started over backwards, never in my room." The witness then testified that after the accident Mr. Herbst suggested removing the Murphy bed and giving her a studio couch, and he put a couch in there for her right away, and she still has it in the room. Mrs. Laura Lurie, called by plaintiff, testified that she lived at the Chelsea Hotel; that she formerly had an In-A-Door bed in her apartment; that some of the apartments have stationary beds and others have In-A-Door beds; that she thinks "the stationary and in-a-door beds were about fifty-fifty"; that she saw plaintiff the morning after the accident, between 10 and 10:30, and she noticed that she had been injured. The witness then described what she saw as to plaintiff's injuries. She further testified that after talking with plaintiff she examined the In-A-Door bed in plaintiff's apartment; that the springs that held the bed as you let the bed down were too loose and two of them were hanging loose at the bottom; that they were not connected at all, but hung loose, four on the right side and three on the left side; that she thinks there should be at least ten springs inserted on both sides; that all the springs appeared very old and rusty; that when Mr. Herbst came to the apartment and heard what had happened he stated that he would take the In-A-Door bed out and put in a stationary bed; that he then had the In-A-Door taken

out and put in a stationary bed. Upon cross-examination the witness testified that she had lived in the Chelsea Hotel for over seven years, that for four and a half years she occupied room 720 and that there was a Murphy In-A-Door bed in that room; that about two and a half years before the accident she moved into room 722, which has a stationary bed. The witness testified that she was familiar with the method of using a Murphy In-A-Door bed and that on the morning after the accident she looked at the springs on the bed in plaintiff's room; that there were three springs on one side and four on the other and they were rusty; that they were full of rust and two of them were loose at the bottom; that they were not fastened at all, they dangled.

The undisputed evidence is that the height of the Murphy bed in plaintiff's room was six feet, seven inches; that its width was about three feet; that including the mattress and covering it weighed between 140 and 150 pounds.

In view of the position taken by defendant it is unnecessary to state its testimony that bears upon its instant contention.

Defendant also contends that "the plaintiff was required to show affirmatively that she was in the exercise of ordinary care for her own safety and her proof having failed in that respect, the trial court erred in not directing a verdict for the defendant." Plaintiff contends that "defendant cannot, on this appeal, raise question of absence of evidence or lack of proof with respect to due care on the part of plaintiff, where instructions requested by defendant submitted the question of contributory negligence of the plaintiff to the jury." In support of this contention she cites *Trust Company of Chicago v. Ancateau,* 317 Ill. App. 186, and *Haynes v. Century Coal Co.,* 171 Ill. App. 83, and there is language in the opinion in each case that supports plaintiff's position. *Haynes v. Century Coal*

*Co.* cites no case in support of its holding, and *Trust Company of Chicago v. Ancateau* cites only the *Haynes* case in support of its ruling. There is no merit in plaintiff's contention. (See *Gunning System v. Lapointe,* 212 Ill. 274; *Chicago Terminal Transfer R. R. Co. v. Schiavone,* 216 Ill. 275, 278; *John Deere Plow Co. v. Carmer,* 350 Ill. 104, 107.) In *Miller v. McHale,* 263 Ill. App. 471, 479, we said:

"Equally without merit, in our opinion, is plaintiff's counsel's further contention that because, after said motions for a directed verdict had been denied, defendant by his attorney argued to the jury the question of the negligence of the driver of the car only, and thereafter requested the court to give certain offered instructions on the issue of his negligence only, defendant took an inconsistent position and waived his right to here assign error on the denial of said motions." See, also, *Cutler v. Gardiner Metal Co.,* 225 Ill. App. 497, 500, decided by the First Division of this court. Moreover, the new Civil Practice Act, ch. 110, par. 192, sec. 68 (3) a (Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 104.068, subpar. (3) a]), provides:

"(3) a. Hereafter, in all civil actions at law, in courts of record, if either party shall at the close of the testimony, and before the case is submitted to the jury, request the court for a directed verdict in his favor, the court may reserve his decision thereon, *and submit the case to the jury under proper instructions as to the law applicable to such case.* . . . " (Italics ours.)

The law governing the instant contention of defendant is well established. In 32 C. J. 564, the author of the article "Innkeepers" states:

"[Sec. 73] d. Contributory Negligence and Assumption of Risk. Where a defect in the building, premises, or appliances of an inn is an obvious one, or is known to the guest, he must use reasonable care and

caution to avoid injury; and where he is guilty of contributory negligence, he cannot recover from the innkeeper. And it has been held that a guest assumed the risk of injury where, after having been in the hotel for such a length of time that he knew or had an opportunity to know of the alleged defects which he claims was the cause of his injury, he voluntarily elected to remain. . . . " (See, also, the many cases cited in support of the foregoing statement of the law.)

In *Fonyo v. Chicago Title & Trust Co.*, 296 Ill. App. 227, the plaintiff lived in a furnished apartment hotel and was injured when she caught her heel in a hole in the carpet which was furnished and maintained by the defendant. There, the plaintiff knew of the hole in the carpet and had reported it to the defendant. She had tripped on the carpet shortly before the day that she received her injury. To quote from the opinion of the court (pp. 236, 237):

" . . . However, on the uncontradicted evidence we hold as a matter of law that plaintiff may not recover because of lack of proof that at and prior to the time she received her injury plaintiff was in the exercise of due care for her own safety. The testimony bearing on that issue was furnished by plaintiff herself. It appears therefrom that plaintiff was perhaps more than any other aware of the condition of the carpet. No person knew the danger better than she. She says she actually tripped upon the carpet shortly before the day on which she received her injury. It also appears that the man sent to repair the carpet told her that the hole could not be repaired. Plaintiff could easily have avoided all danger either by attention to her steps or by taking the simple precaution of covering the hole in the carpet. Plaintiff was not in the position of a transient guest at a hotel nor of a lodger in a lodging-house. She was a permanent tenant, familiar with the premises.

"It would serve no useful purpose to discuss the cases cited on the point of plaintiff's contributory negligence. Under the facts as narrated by her, we think all reasonable persons must agree that plaintiff was negligent and that her negligence contributed to the unfortunate accident by which she was injured."

The plaintiff had recovered a verdict and judgment in the trial court and the Appellate court reversed the judgment. The petition for leave to appeal from the judgment of the Appellate court was denied (296 Ill. App. xxii).

We have noted the case of *Pollard v. Broadway Cent. Hotel Corp.*, 353 Ill. 312. There the plaintiff recovered a judgment in the trial court and the Appellate court reversed the judgment with a finding of facts as follows (p. 314): "The court finds as a fact that the plaintiff was not at the time of her injury in the exercise of ordinary care for her own safety." The Supreme court held (p. 323): "The question as to whether she was or was not in the exercise of ordinary care and caution for her own safety must be solved by a jury." However, the *Pollard* case differs very materially from the instant case, upon the facts.

We are constrained to hold that the instant contention of defendant is a meritorious one. For seven years plaintiff had used a Murphy In-A-Door bed. She had the right to have a stationary bed but because she transacted her business of facial uplifting and massage in her apartment she did not want that kind of bed, as it took up too much room and gave an uninviting aspect to the room. The defect in the bed was well known to plaintiff for a long time and she knew that the repair work done upon the bed by the house man did not remedy the defect. She controlled the operation of the bed, and she testified that "the bed never did work right. It just came down too quick"; that every day she noticed that there was something wrong

with it "because it kept coming down on its own accord and I was afraid it would hurt me"; that every time she started the bed down she feared it might fall on her and she "was afraid it would hurt me," and with full knowledge of the danger to her person when she operated the bed she continued day after day to subject herself to the hazard which finally brought about her injury. Her age, sixty-nine years; her height, five feet, two inches; her weight, 130 pounds; the dimensions and weight of the bed, were additional factors that tended to increase the risk of injury she assumed when she operated the defective bed. Under the state of facts shown by plaintiff's evidence she assumed the risk of injury and was guilty of contributory negligence as a matter of law.

The judgment of the Superior court of Cook county is reversed.

*Judgment reversed.*

SULLIVAN, P. J., and FRIEND, J., concur.