**Julian E. Fortney, Appellant, v. Hotel Rancroft, Inc., Harry Rubenstein and Harry Bernstein, Appellees.**

### Gen. No. 46,502.

First District, Third Division.

March 16, 1955.

Additional Opinion, April 7, 1955.

Rehearing denied April 7, 1955.

Released for publication April 7, 1955.

Joseph Barbera, of Chicago, for appellant.

Wyatt Jacobs, and Robert O. Rooney, both of Chicago, for appellees; Joseph B. Lederleitner, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff sues to recover for injuries, resulting from an assault upon him while he was a guest of the defendant hotel. There was a jury trial, and at the close of the plaintiff's case, no defense being offered, defendants' motion to direct a verdict was sustained. The

jury returned a verdict of not guilty, and judgment was entered upon the verdict. To reverse this judgment, plaintiff appeals.

The evidence discloses that defendants owned and operated the Hotel Rancroft in Chicago, to which the general public was invited as guests. Plaintiff admittedly was a guest of the hotel and had occupied room 404 on the fourth floor of the hotel for approximately eight years prior to the occurrence in question. The entrance to the hotel is from Randolph street. Leading from the entrance is a long, narrow lobby to the elevators, the staircase and the hotel clerk's office and desk. The desk is located at the west wall. Three elevators leading to the upper floors are at the east wall, opposite the clerk's desk. Immediately to the south of the clerk's desk is the stairway leading to the upper floors of the hotel.

The only entrance to plaintiff's room was through a door, which had a Yale lock. The key to his room was issued to him when he became a guest of the hotel and bore an identification tag marked "Hotel Rancroft." He was directed by the management to leave the key at the desk with the clerk whenever he left the hotel. He always followed the direction, never leaving the hotel without turning the key in at the desk, even if he only went out for a newspaper.

On the night of the occurrence, James Quinn was on duty at the clerk's desk, apparently in charge of the hotel during his hours of duty. He took charge of the guests' keys left at the desk, took care of the telephone and ran the elevators.

On Sunday, February 19, 1950, plaintiff left the hotel around midnight. He was taken down in one of the elevators operated by Quinn. On leaving his room, he pulled the door shut and heard the tumbler click, and the door was locked. He left the key with Quinn at the desk on the lobby floor and went to the tavern next door. Nothing unusual occurred during his stay

at the tavern. He left there and visited another tavern on North Clark street. He returned to the hotel, arriving there at approximately 4:00 o'clock in the morning. During the entire evening, he testified, he had not engaged in any arguments or fights with anybody and was not intoxicated. Arriving at the hotel, he entered the lobby, and the only person present was Quinn. He was behind the desk. Quinn gave him his key and took plaintiff in the elevator to the fourth floor. Upon arriving at his room, plaintiff unlocked the door and entered the room. All of the lights were off, and he reached around the side of the room to turn the switch for the ceiling lights. Upon turning on the lights, he took off his coat and hat and hung them in the closet. He turned toward the bed, and as he did, someone appeared to step out of the bathroom and hit him across the side of the face, knocking him unconscious. He did not regain consciousness until Tuesday afternoon, when he found himself lying across the bed. The houseman and maid were bathing his face. They remained with him approximately an hour. On Wednesday following the attack, blood was observed on the north wall of the room at the right-hand side of the bed and on the bedclothes.

Plaintiff remained in his room all day Wednesday. He telephoned the desk clerk on duty that he was in need of a doctor. He was advised that a doctor had been called, but no medical assistance arrived until Thursday afternoon about 3:00 o'clock. The doctor was accompanied by defendant Rubenstein. He was advised by the doctor to go to Roosevelt hospital and went there in a cab. He was examined there Thursday afternoon, and at the suggestion of the attending doctor, Dr. Udell, an eye specialist, was called in for consultation. They administered shots of penicillin to plaintiff. Sometime thereafter his left eye was re-

moved, due to the injury to the eye resulting from the assault. He remained at the hospital seventeen days.

■ The relationship of innkeeper and guest imposed a duty upon the defendants to use a "very high degree of care" to secure the safety of the guest. Rice v. Warner Hotel Co., 201 Ill. App. 530, 537, followed in Young v. Knickerbocker Hotel Co., 334 Ill. App. 80 (Abst.). In Corpus Juris Secundum, Vol. 43, p. 1175, it is stated:

"The innkeeper must protect his guest, while in the inn, against injuries at the hands of third persons whether they are guests or strangers, where it is within his power or that of his servants to do so."

■ The ruling of the court in directing a verdict for the defendants presents to us the question whether the evidence, and every reasonable inference which can be drawn from it, tends to prove the charge of negligence in the complaint. If it does, then the court was in error in directing a verdict.

We think that the circumstances disclosed by the evidence called for some explanation from the defendants as to how the stranger, who assaulted plaintiff, could gain entrance to plaintiff's room at the early hour of the morning in question without a key; or how it was possible for the stranger to reach the fourth floor of the hotel, whether by use of the elevator or staircase, without being noticed by the night clerk in charge of the desk. There was no such explanation forthcoming, since no evidence was offered by the defendants.

■ In the absence of such explanation, we think the evidence presents two reasonable inferences: first, that the stranger, who assaulted plaintiff, was entrusted with a key to plaintiff's room; or, secondly, the key, where usually kept at the night clerk's desk, was left unguarded and thereby made accessible to a stranger.

331

The facts we have detailed and the reasonable inferences we are forced to draw from them, in our opinion, establish prima facie, a breach of defendants' duty, and entitle plaintiff to a jury's determination of the facts. Directing a verdict for the defendants in the instant case denied to plaintiff the constitutional right of trial by jury. Schneiderman v. Interstate Transit Lines, Inc., 331 Ill. App. 143, aff'd 401 Ill. 172, and cases there cited.

Defendants rely on Walden v. Chelsea Hotel Co., 337 Ill. App. 292 (Abst.). That case and others cited by defendants are not applicable. In the Walden case an employee, entrusted with a key to perform his usual duties as a porter, invaded the guest's room with use of his key, when he was off duty, and assaulted her. He was not then in the discharge of any duty entrusted to him. There was no showing that defendant was negligent in hiring the employee or was aware that he was an immoral character. The factual distinction is obvious.

After plaintiff left the hospital, he returned to the hotel, where he had a conversation with Quinn, who was then on duty at the clerk's desk in the lobby. This conversation took place approximately twenty-three days after the assault. Defendants' objection to the conversation with Quinn was sustained. The offer of proof made by plaintiff disclosed that if plaintiff were permitted to answer the questions, as to the conversation between himself and Quinn, he would have testified that Quinn told him that between twenty minutes and a half-hour before plaintiff arrived at the hotel at 4:30 in the morning, he let two men into plaintiff's room; that these two men told Quinn they were acquaintances of plaintiff, and he let them in for that reason; and that when plaintiff arrived he forgot to

tell plaintiff about the two men being in the room. An objection to the offer of proof was also sustained.

 The court did not err in excluding the evidence offered as to the admission made by defendants' employee, Quinn, about twenty-three days after the assault in question. The proffered evidence was incompetent. It is the settled rule in Illinois that an admission by an agent or employee, after the transaction is completed, or the incident occurred, which cannot be considered a part of the res gestae, is incompetent. Some of the cases holding that such statements are mere narrative of the past event or occurrence, and not binding upon the principal, are Johnson v. Swords Co., 286 Ill. App. 377, where the driver of the truck carried the injured boy from the place of the accident a comparatively short distance to the yard of the boy's residence. Admissions made by the driver to the father of the boy as to how the accident happened were held inadmissible and not part of the res gestae. Baier v. Selke, 211 Ill. 512, 518, where plaintiff was allowed to testify that Weber, the foreman, visited him at his home, and in explaining how the accident happened, told him that he forgot to throw the switch. This was held incompetent. The court said:

"A declaration made concurrently with the act and constituting a part of the res gestae is admissible in evidence, but where it is a mere narration in regard to a transaction already passed, it does not bind the principal and cannot be proved." (Citing cases.)

Boyce v. Greeley Square Hotel Co., 181 App. Div. 61, 168 N. Y. Supp. 191, and Susemiehl v. Red River Lumber Co., 306 Ill. App. 430, relied upon by plaintiff to sustain the competency of the proffered testimony, are not applicable. In each of those cases the court determined that the particular admission was in fur-

therance of the interest of the principal and within the scope of their authority.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

KILEY, P. J. and LEWE, J., concur.

ADDITIONAL OPINION UPON PETITION FOR REHEARING

Defendants, in their petition for rehearing, contend that our holding, that the circumstances in the instant case imposed upon defendant as an innkeeper the duty to use a "very high degree of care," went beyond the rule established by the cases in Illinois and elsewhere. They contend that the only duty an innkeeper owes to his guest is to use ordinary care for the safety of the guest. Defendants rely upon Pollard v. Broadway Cent. Hotel Corp., 353 Ill. 312; McCleod v. Nel-Co Corp., 350 Ill. App. 216; Duncan v. Chelsea Hotel Co., 326 Ill. App. 241; Cottmire v. 181 E. Lake Shore Drive Hotel Corp., 330 Ill. App. 549, and Walden v. Chelsea Hotel Co., 337 Ill. App. 292, which support the rule of "ordinary or reasonable care." These cases, except the Walden case, involved injuries to a guest resulting from defective or dangerous conditions existing in the premises of the innkeeper.

The Walden case, as pointed out in our opinion, involved an assault upon a guest by a porter employed by the defendant, entrusted with a key to perform his duties, and who invaded the guest's room with the use of his key when he was off duty and assaulted her. It was there held the employee was not then in line of duty, and there was no showing that defendant was negligent in hiring the employee or was aware that he was an immoral character.

None of the cases relied upon by defendants present the special circumstances present in the instant case.

334

Whether the rule of duty requires a "very high degree of care" or a "high degree of care," we do not regard as vital. They are relative terms.

We have concluded to modify the statement in our opinion as to the degree of care required, and hold the defendants in the instant case to the exercise of a high degree of care. We think that the application of such a rule of duty is warranted in the instant case, under the special circumstances, as a necessary protection for a guest. A guest, who is either asleep in his room or about to enter his room, should not be subjected to the risk of an assault by a stranger. A guest has a right to rely upon the innkeeper doing all within his power to avoid or prevent such an assault, and to that end should be required to exercise a high degree of care. This rule of duty finds support in the statement in Corpus Juris Secundum, Volume 43, p. 1175, and cases therein cited, quoted in our opinion.

The petition for rehearing is therefore denied.

KILEY, P. J. and LEWE, J., concur.